DECISION AND JUDGMENT ENTRY
This is an appeal of a summary judgment granted by the Lucas County Court of Common Pleas in favor of a bank and an investment company. The court found appellees were entitled to a money judgment and foreclosure of mortgages arising out of a 1982 homebuilding project. Because we conclude that the trial court properly awarded summary judgment, we affirm.
This matter has its origins in a business relationship established in the late 1970s between appellant Victor Building Company ("VBC"), and appellee Northern Ohio Investment Company ("NOIC"). Appellee NOIC was principally in the business of making home mortgage loans. Appellant VBC was the creation of its principal, Victor Markowitz. It was a construction company which specialized in building low-cost homes suitable for purchase subsidy through the Federal Housing Administration ("FHA"). NOIC provided construction financing for VBC.
By all accounts, the relationship between VBC and NOIC was profitable for both. NOIC made construction loans to VBC, generally in the amount of $30,000, with which VBC would purchase a lot and construct a home. When the home was completed, NOIC would handle the FHA loan for the purchaser, disbursing to itself the principal and interest on the construction loan at closing. Hundreds of homes were built and sold in this manner prior to 1982.
It is not clear how formal the relationship between VBC and NOIC was at the beginning, but the deposition testimony of all parties suggests that over time any formality between the lender and the builder relaxed. No elaborate construction loan contracts were signed. VBC gave NOIC only a bare promissory note secured by a mortgage for each project. Victor Markowitz testified that initially the understanding was that a certain percentage of the loan would be disbursed upon completion of project milestones (e.g., twenty-five percent upon completion of the foundation). As the volume of construction increased, Markowitz would simply call NOIC, ask for money and advise NOIC to charge the draw as a progress payment against a particular project. NOIC took no steps to verify that construction was completed on the specific lots for which Victor Markowitz claimed a draw.
In the early 1980s, as rampant inflation pushed prime lending rates above twenty percent, demand for new housing shrank. In response to the reduced demand, Victor Markowitz's father, appellant Melvin Markowitz, developed a plan for "warehousing" some of the houses for which VBC could not find buyers. Using a separate credit line with a different lender, Melvin Markowitz purchased these homes, using them as rental units until a buyer could be found. Any shortfall between the rent and mortgage payments was to be made up out of the cashflow from VBC.
NOIC obtained an unsecured credit line from Ohio Citizens Bank to fund its mortgage lending; Ohio Citizen Bank was the predecessor in interest to appellee National City Bank. In early 1982, Ohio Citizens assigned a new loan officer to handle the NOIC account. Noting that a substantial portion of NOIC's loan portfolio was to VBC, the Ohio Citizens' loan officer sought to verify the security VBC provided for these loans. He discovered that some of the lots for which VBC had taken one hundred percent of its construction draw were undeveloped.
Ohio Citizens' response to this information was a cessation of lending to NOIC and a demand that NOIC provide security for the VBC loans by assigning NOIC's notes and mortgages from VBC to Ohio Citizens.[1] A cascade effect followed. NOIC was unable to provide further funds to VBC. Without funds, VBC could not continue further construction and could not fund the mortgage payment shortfall for Melvin Markowitz's warehousing project.
Following the closing of NOIC's credit line, the Markowitzes met with officers of Ohio Citizens and NOIC in an attempt to negotiate a resumption of funding for VBC. Although money for a few nearly completed homes was forthcoming, VBC was never again restored to its original funding status, even though Ohio Citizens resumed lending to NOIC a month later.
In April 1996, as the statute of limitations on the promissory notes came near, Ohio Citizens, now known as National City Bank ("Bank"), filed the first of several lawsuits[2] against VBC and Victor Markowitz, seeking judgments on scores of promissory notes and foreclosure of the mortgages that secured them. VBC and Victor Markowitz answered the Bank's claims by denying liability on the notes and asserting a countersuit premised on the Bank's and NOIC's purported wrongful termination of lending to VBC. Melvin Markowitz filed a third-party complaint against the Bank and NOIC seeking compensation for his losses in the warehousing project which he asserted were caused by the cessation of lending to VBC.
Discovery and procedural wrangling consumed the next two and one-half years, but eventually all parties submitted motions and cross-motions for summary judgment. The trial court swept aside appellants' defenses and counterclaims, finding that most were based on oral contracts which were outside the statute of limitations. We will discuss these rulings more fully when we consider the specific assignments of error.
Ultimately the court denied appellants' motions for summary judgment and granted those of the Bank and NOIC. From this judgment, appellants VBC and Melvin Markowitz[3] bring this appeal, setting forth the following seven assignments of error:
 "1) Appellants were entitled to Summary Judgment against National City Bank because it, as assignee, failed to provide VBC and Victor Markowitz, as account debtors, the proper notice required by R.C. 1309.37 an R.C. 1309.45, before attempting to collect on promissory notes assigned from Northern Ohio Investment Company to National City Bank.
 "2) The trial court erred in granting Bank summary judgment with respect to its claims based on certain promissory notes of amounts allegedly owed by Appellants to Bank.
 "3) In interpreting and ruling on the pleadings, the trial court failed to acknowledge or recognize Appellee's breach of written contract claim based on a Six Hundred Thousand Dollar ($600,000) promissory note.
 "4) The trial court abused its discretion by denying Appellants leave to amend their Answer and Counterclaim;
 "5) The trial court erred in granting Appellee's motion for Summary Judgment on Appellants' breach of tacit agreement claim and improperly applied the statute of limitations applicable to such agreements as set forth in R.C. 2305.07.
 "6) The trial court erred in granting Bank's motion to strike as improperly submitted evidence the documents constituting Attachment 23 to Appellants' Joint Memorandum in Opposition.
 "7) The trial court erred when it granted NOIC summary judgment with respect to Third Party Plaintiff Melvin Markowitz's claim for breach of contract based on lack of evidence of said contract."
On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated
 "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 67, Civ.R. 56(E).
When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988),38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc.(1999),135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248.
One issue for which there is no dispute is the validity of the promissory notes and the mortgages at issue. Similarly, although there may be a question concerning the balance due, appellants do not contest appellees' assertions that these notes remain unpaid. Appellants' assignments of error, therefore, are directed to the trial court's rejection of defenses offered to avoid payment and the validity of appellants' counterclaims.
 I.
In their first assignment of error, appellant VBC insists that it should be absolved of the debt it incurred because appellee Bank failed to provide it with statutory notice of the assignment of these debts. Citing R.C. 1309.37, 1309.45 [UCC 9-318 and UCC 9-502 respectively] and the syllabus rule of _Surety Savings Loan Co. v. Kanzig (1978),53 Ohio St.2d 108, appellants argue that the only way that an assignee of a promissory note obtains the right to institute collection against the maker of the note is to comply with the statutes. As interpreted inSurety, this requires the assignee to notify the debtor: (1) that the account has been assigned; (2) that payment is to be made directly to the assignee; and (3) provide reasonable identification of the rights assigned. Appellee Bank failed to satisfy these requirements, according to appellant VBC, and is consequently barred from seeking collection.
R.C. 1309.45 governs the collection rights of a secured party. Section A of the statute provides:
 "(A) When so agreed and in any event on default, the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled * * *."
R.C. 1309.37(C) defines the responsibility of a debtor whose account is assigned:
 "(C) The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."
In Surety, the Kanzigs bought a modular home from a dealer and financed their purchase and necessary site improvements through Wayne Savings. Shortly thereafter, Wayne received a letter from Surety Savings and Loan advising Wayne that Surety held the floor plan financing for the modular home dealer. Surety asked Wayne to distribute a certain sum directly to Surety on closing. Instead, at closing, Wayne issued a check payable to the Kanzigs and the dealer. The Kanzigs endorsed the check to the dealer who cashed the check, but did not pay Surety. Surety then sued Wayne and the Kanzigs to recover its loss attributable to this modular home. The Kanzigs cross-claimed against Wayne for indemnification.
In the trial court, Surety prevailed on its claim in chief and the Kanzigs won indemnification. On appeal, the judgment was affirmed, with the court of appeals holding that once Wayne Homes became "subjectively" aware of Surety's security interest, its payment to anyone else was at its own peril.
The Supreme Court of Ohio reversed, finding Surety's notification of its interest to Wayne insufficient to entitle it to direct payment. The court held:
 "In order for a secured party to exercise its collection rights under R.C. 1309.45(A), it must, pursuant to R.C. 1309.37(C), give the account debtor notification which sets forth: (1) that the account has been assigned; (2) that payment is to be made directly to the secured party; and (3) a reasonable identification of the rights assigned." Surety Savings Loan Co. v. Kanzig, supra, syllabus.
Appellants assert that such notice is the only way an assignee may pursue a debtor. Even the commencement of a lawsuit is insufficient to constitute compliance with the notification requirements of R.C.1309.37(C), according to appellants.
We have surveyed the cases dealing with this statute and find none in support of appellants' position. As in Surety, the provisions invariably come into play when a debtor is uncertain as to whom payments should be made.[4] R.C. 1309.45 and 1309.37 read in pari materia set a bright line test as to whether an assignor or an assignee is entitled to payment and, so long as the statutory provisions are complied with, relieve the debtor of the possibility that he or she might be held twice accountable for the same debt. Appellants have failed to direct our attention to any case in which the statutes have been utilized by a debtor to avoid making payments to anyone. Moreover, appellants cite no authority for their assertion that a notice letter is the only method which can be employed to satisfy the statute and that a lawsuit alleging the assignment cannot constitute compliance.
In our view, the various complaints which underlie this case expressly notify the account debtor that its account has been assigned and identify in detail those rights assigned. As for notice that payment should be made to the secured assignee, we can think of little more clear in this regard than appellee Bank's complaint prayer that judgment be had in its favor. In our view, this satisfies the Surety syllabus. Accordingly, appellants' first assignment of error is not well-taken.
 II.
In their second assignment of error, appellants argue that summary judgment should not have been granted on the notes because the bank official who determined the balance due was incompetent to set such a figure. The banker improperly relied on NOIC's books to determine the outstanding balances, according to appellants. This being the case, appellants contend, appellee Bank failed to show damages and should not have been granted summary judgment.
Notwithstanding that both appellee and appellants relied on NOIC's books to determine the balances and notwithstanding that appellee never raised this argument before the trial court, the simple fact is that the promissory notes themselves are evidence of debt. That the current balance due on these instruments is less than their face amounts constitutes an assertion of a partial accord or satisfaction.[5] These are affirmative defenses, Civ.R. 8(C), for which the party asserting the defense has the burden of proof. Hines v. Riley (1998),129 Ohio App.3d 379, 383; Dawson v. Anderson (1997), 121 Ohio App.3d 9,13. In this case, appellees' witness, after examining NOIC's books, essentially admitted that the sum due was less than the face value of the notes. If appellants assert a different figure they were required to come forward with some evidence to establish that figure. They did not. Accordingly, appellants' second assignment of error is not well-taken.
 III.
On April 1, 1982, Victor Markowitz executed a promissory note to NOIC for $600,000. The operative portion of the note states:
 "For valuable consideration received, we promise to pay to the order of The Northern Ohio Investment company on or before eleven (11) months after date, the sum of Six Hundred Thousand and 00/100th Dollars ($600,000.00) together with interest. Said interest shall be computed at two percent (2%) over the Ohio Citizens Trust Company prime rate, principal and interest payable on maturity."
Below the above quoted paragraph is a memorandum indicating that the note is secured by a mortgage on twenty lots in Oregon, Ohio. This single page note is signed by Victor Markowitz, personally, and as president of VBC. This is one of the notes assigned to appellee Bank. It is uncontested that only slightly more than $100,000 was paid by NOIC to VBC on this note before lending was halted.
Appellants insist that this promissory note constitutes a bilateral contract in which NOIC obligated itself to loan $600,000 to VBC. Since NOIC did not fully fund the note, appellants contend, it breached this contract and should be found liable for the consequential damages. The trial court concluded that if there was any agreement to fund the remainder of the $600,000, it does not appear on the face of the promissory note and must, therefore, be an oral agreement. Since the statute of limitations for an oral contract made in 1982 expired in 1988, see R.C. 2305.07, the claim was outside the statute of limitations, the trial court concluded.
The trial court's logic is unassailable. More fundamentally, however, we note that any oral side agreement to the note would be an antithetical to the note itself. Not only does the note recite that whatever valuable consideration upon which it was based has been received, but any condition or restriction on the promise to pay would be incompatible with the requirements of R.C. 1303.03 [UCC 3-104] and R.C. 1303.05 [UCC 3-106] that the instrument contain an "unconditional promise * * * to pay * * *." R.C. 1303.03(A); see, also, 2 White Summers, Uniform Commercial Code (4 Ed. 1995) 86, et seq. This was a simple promissory note which contained a unilateral unconditional promise to pay. As such, it cannot be the basis of a claim against one who is not its maker. Accordingly, appellants' third assignment of error is not well-taken.
 IV.
In their fourth assignment of error, appellants assert that the trial court abused its discretion when it denied their January 1999 request to file a third amended answer and second amended counterclaim.
The decision of whether to grant leave to amend pleadings beyond the first amendment rests in the sound discretion of the court and will not be reversed absent an abuse of that discretion. Civ.R. 15(A); WilmingtonSteel Products, Inc. v. Cleveland Electric Illuminating Co. (1991),60 Ohio St.3d 120, 121. An abuse of discretion is more than an error of law or of judgment, the term implies that the court's attitude is arbitrary, unreasonable or unconscionable. Calderon v. Sharkey (1982),70 Ohio St.2d 218, 219-220. The trial court's analysis of a motion to amend should include whether the amendment is sought in good faith, whether there is at least a prima facie showing that the movant can support new matters encompassed in the amendment, or whether the amendment is sought merely to delay the proceedings. The amendment should not be unfairly prejudicial to the opposing party. Solowitch v. Bennett
(1982), 8 Ohio App.3d 115, 117.
Appellants argue that their need to amend was precipitated by two factors. The first was appellants' substitution of new counsel in October 1998; the second was the trial court's inordinately slowin-camera review of discovery documents. The latter argument was not presented to the trial court.
The first of these cases was initiated on April 24, 1996. Appellants insist that the matter changed complexion a year later when an additional twenty-eight promissory notes were sued upon, bringing the total amount in controversy to a sum in excess of $1 million. Appellants do not, however, explain the impact of these later claims on the defenses and counterclaims available to them. Consequently, we cannot fault the trial court for refusing to give appellants a new time-line when these additional claims arose.
With respect to the substitution of counsel, it should be noted that the court's deadline for filing motions for summary judgment was September 29, 1998. Appellants moved to substitute counsel on September 15, 1998, and were granted sufficient accommodation for new counsel to respond to appellees' summary judgment motion. The trial court could very well have determined that to permit amendment at that late date would have operated to appellees' prejudice. Accordingly, appellants' fourth assignment of error is not well-taken.
 V.
In their fifth assignment of error, appellants contend that the trial court should not have applied the six year statute of limitations contained in R.C. 2305.07 to their claim that appellees breached a "tacit" agreement not to litigate the promissory notes.
According to appellants, a contract in writing is subject to the fifteen year statute of limitations found in R.C. 2305.06, a contract not in writing is subject to the six year statute of limitations found in R.C. 2305.07, but a "tacit" agreement may apparently be acted upon in perpetuity.
The adjective "tacit" means, "(1): arising without express contract or agreement (2): arising by operation of law." Merriam-Webster's Collegiate Dictionary (10 Ed. 1996) 1199. As appellants make no argument that the purported agreement arises by operation of law, we must apply the first meaning which, when used to modify the word agreement or contract, creates the oxymoron of an agreement without an express agreement or a contract without an express contract. Clearly, the formation of an enforceable contract requires something more concrete than this. SeeNoroski v. Fallett (1982), 2 Ohio St.3d 77, 79. Even, assumingarguendo, that there was an agreement it was, at best, oral and subject to the statute of limitations set in R.C. 2305.07. Consequently, the trial court did not err in concluding that appellants' counterclaim on the "tacit" agreement was time barred. Accordingly, appellants' fifth assignment of error is not well-taken.
 VI.
Appellants' remaining assignments of error are interrelated. In their sixth assignment of error, they complain that the trial court improperly struck an exhibit attached to its memorandum in opposition to summary judgment which appellants contend provided proof of Melvin Markowitz's claim that NOIC guaranteed his warehousing loans to another lending institution. In the seventh assignment of error, appellants argue that had the documents referred to in the sixth assignment of error not been struck, summary judgment would have been inappropriate for Melvin Markowitz's breach of contract claim.
At issue is a set of five letters from 1981 and 1982 on NOIC letterhead addressed to First Federal Savings and Loan of Defiance, Ohio, over the purported signature of NOIC's then president. Each letter refers to a series of FHA "Commitments" or "Firm Commitments" and advises the Defiance lender that NOIC, "* * * will close the above captioned commitments prior to their expiration dates or prior to the due-date of your mortgage, whichever comes first."
The trial court, citing Sweet v. D'Poo's (Feb. 3, 1994), Cuyahoga App. No. 65873, unreported, and Spier v. American University of the Caribbean
(1981), 3 Ohio App.3d 28, found these documents to be unauthenticated responses to various requests for production of documents and, therefore, not competent evidence by which the evidentiary requirements of Civ.R. 56 could be satisfied. Consequently, the trial court concluded that, absent the NOIC letters, there was no written warehousing agreement between NOIC and Melvin Markowitz. Without a written agreement, any claim was well outside the statute of limitations for contracts not in writing. R.C. 2305.07.
On appeal, appellants state that the letters were not merely responses received during discovery, but had been authenticated and attached to the deposition of NOIC's current chief executive officer, John Wilson. A review of Wilson's testimony about these documents, however, reveals that he identified the letterhead upon which the letters were written and stated that the signature appeared to be that of Richard Coble, NOIC's president in the early 1980s. Beyond this he disavowed any knowledge of the letters. The purported author of the letters, Richard Coble, submitted to appellants' deposition, but was never asked about the letters.
The evidence submitted in support of or in opposition to a motion for summary judgment must be competent within the legal meaning of that word. Sweet, supra; see, also, Jackson v. Alert Fire and Safety Equip.,Inc. (1991), 58 Ohio St.3d 48, 52. Ordinarily, this means that a document submitted must be authenticated in some manner. Most commonly, authentication may be had by the testimony of someone with knowledge that the document is what it is claimed to be. Evid.R. 901(B)(1). John Wilson denied knowledge of the letters at issue. He, therefore,
was in no position to vouch for their authenticity. Consequently, the trial court did not err in striking the exhibit in question for lack of authentication. Accordingly, appellants' sixth and seventh assignments of error are not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellants.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ James R. Sherck, J.
JUDGE
Richard W. Knepper, P.J., Mark L. Pietrykowski, J., CONCUR.
[1] Two of the notes and mortgages were retained by NOIC. These were foreclosed by summary judgment in the judgment entry at issue.
[2] All of these cases were eventually consolidated into the cause before us.
[3] Victor Markowitz did not file a notice of appeal and is, therefore, not a party here.
[4] See First Bank of Marietta v. Roslovic (1999), 86 Ohio St.3d 116
(progress payments made directly to subcontractors after proper notice of assignment not allowable to satisfy assigned note of the principal contractor); Dammit v. Owens Financial and Audio Video Center (Nov. 23, 1992), Butler App. No. CA92-07-122, unreported; (payments made to assignor who sold audio equipment not available to satisfy debt after statutory notice of assignment received); Southern Floridabanc v.Professional Investments (1991), 77 Ohio App.3d 435 (distribution of assigned partnership share in face of a proper assignment notice made the partnership liable for the assignor's default); _Union Investment v.Midland-Guardian Co. (1986), 30 Ohio App.3d 59 (improper notice of assignment of note created no legal right to payment).
[5] An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that allegedly due. Satisfaction is performance of the contract. Allenv. R. G. Indus. Supply (1993), 66 Ohio St.3d 299, 331.