[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 116.]

FIRST BANK OF MARIETTA, APPELLANT, *v.* ROSLOVIC & PARTNERS, INC., APPELLEE.

ROSLOVIC & PARTNERS, INC., APPELLEE, *v.* MASCRETE, INC. ET AL.; FIRST BANK OF MARIETTA, APPELLANT.

[Cite as *First Bank of Marietta v. Roslovic & Partners, Inc.*, 1999-Ohio-89.]

*Secured transactions—Payments made by an account debtor to an assignor of accounts receivable after receiving sufficient notice of an assignment violate the assignment—Account debtor subject to liability to the assignee for payments made to the assignor.*

Payments made by an account debtor to an assignor of accounts receivable after receiving sufficient notice of an assignment violate the assignment, thus subjecting the account debtor to liability to the assignee for the payments made to the assignor.

(No. 98-1097—Submitted March 31, 1999—Decided July 28, 1999.)

APPEALS from the Court of Appeals for Franklin County, Nos. 97APE09-1199 and 97APE09-1201.

———————————

{¶ 1} This case arises from an assignment of accounts receivable by a concrete subcontractor to one of its creditors. Appellee, Roslovic & Partners, Inc. ("Roslovic"), executed a contract with Glimcher Properties Limited Partnership for the construction of two Lowe's Home Centers in Columbus, Ohio. Roslovic, a general contractor, entered into a subcontract with Mascrete, Inc. ("Mascrete"), a concrete contractor. Under the terms of this contract, Mascrete was to perform the concrete work for both Columbus-area projects.

{¶ 2} Mascrete received financing from appellant, First Bank of Marietta ("First Bank"). In previous transactions Mascrete had provided First Bank with a

general assignment of accounts receivable as security for loans. However, First Bank did not feel that Mascrete had proper documentation of collateral to secure the financing of the Lowe's Home Center projects. Therefore, First Bank requested that Mascrete specifically assign its accounts receivable on its major contracts, including the accounts receivable for the Lowe's Home Center projects, to First Bank. On May 27, 1994, Mascrete assigned to First Bank all money due, or to become due, to Mascrete for all of its current major projects.

{¶ 3} The May 27, 1994 assignment authorized Roslovic to pay all money due to Mascrete under the Lowe's Home Center contracts to First Bank by check drawn jointly to the order of First Bank and Mascrete. The assignment also gave First Bank the authority to collect all money due to Mascrete under the two contracts. The parties agree that Roslovic received proper notice of this assignment as required by R.C. 1309.37(C).

{¶ 4} Following receipt of this assignment, First Bank contacted all of the general contractors at each of Mascrete's projects and demanded that all payments be sent to First Bank. Several of these general contractors, including Roslovic, were concerned that First Bank would not properly apply the money due to Mascrete and that laborers and suppliers would not be paid, thus jeopardizing the completion of the various projects.

{¶ 5} After receiving notice of the assignment, and upon advice of counsel, Roslovic proposed to First Bank that it issue three-party checks payable to First Bank, Mascrete, and the various subcontractors and suppliers to whom Mascrete owed payment. However, First Bank refused to accept this offer, demanding that all checks be made out to First Bank and Mascrete jointly and given directly to First Bank.

{¶ 6} Following First Bank's refusal of this proposal, Roslovic began to issue checks payable to Mascrete and its various subcontractors and suppliers. Roslovic contends that it had the authority to make these payments under the terms

2

of the contract, which authorized Roslovic to make payments on all claims for labor and material in the event that Mascrete failed to pay subcontractors and suppliers. Between July and September 1994, Roslovic paid a total of $159,972.22 solely and directly to Mascrete. In addition, Roslovic issued joint checks payable to Mascrete and its various subcontractors. In October 1994, amid controversy concerning to whom various sums were owed, Roslovic stopped all payments to Mascrete and its various subcontractors and suppliers.

{¶ 7} First Bank filed a claim against Roslovic in the Franklin County Court of Common Pleas, alleging that Roslovic had violated the assignment of receivables between First Bank and Mascrete by paying sums directly to Mascrete. First Bank also alleged that Roslovic owed additional sums to Mascrete for additional work performed by Mascrete pursuant to change orders. Roslovic's answer denied the material allegations of the complaint and asserted affirmative defenses. Roslovic also filed a complaint against First Bank, Mascrete, and several other subcontractors and contractors, seeking amounts allegedly owed under the terms of the contract for bonding of liens and payment of additional amounts under the contract. First Bank and several other defendants filed answers to this complaint.

{¶ 8} The two cases were consolidated and tried to the court. The court granted judgment in favor of Roslovic and denied the claims of First Bank. On First Bank's appeal to the Franklin County Court of Appeals, the court of appeals affirmed the trial court's decision. The cause is now before the court upon the allowance of a discretionary appeal.

_____

*Hall Law Firm*, *Rosemarie A. Hall* and *Charles D. Hall III*, for appellant.

*Porter, Wright, Morris & Arthur* and *Brian L. Buzby*, for appellee.

_____

**MOYER, C.J.**

**{¶ 9}** The sole issue presented is whether payments made by an account debtor to an assignor of accounts receivable after receiving sufficient notice of an assignment violate the assignment, thus subjecting the account debtor to liability to the assignee for the payments made to the assignor. First Bank is contesting only the checks payable to Mascrete to be used to pay wages.

**{¶ 10}** R.C. 1309.37(C) provides the procedure by which an assignee of accounts receivable may obligate an account debtor for payments made on the accounts:

"(C) The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."

**{¶ 11}** Pursuant to this section of the Revised Code, an assignee may exercise collection rights against an account debtor if the account debtor receives (1) an indication that the account has been assigned, (2) a specific direction that the payment is to be made to the assignee rather than the assignor, and (3) a reasonable identification of the rights assigned. *Sur. S. & L. Co. v. Kanzig* (1978), 53 Ohio St.2d 108, 7 O.O.3d 187, 372 N.E.2d 602.

**{¶ 12}** In this case, the notice received by Roslovic pertaining to Mascrete's assignment of accounts receivable did meet the requirements set forth in R.C. 1309.37(C) and clarified in *Sur. S. & L.* The notice of assignment received by Roslovic stipulated that all sums due to Mascrete were to be paid by check drawn jointly to the order of First Bank and Mascrete.

**{¶ 13}** R.C. 1309.37(C) indicates that an account debtor may be liable to an assignee for payments made on the account to parties other than the assignee. The last sentence of this subsection reads, "[T]he assignee must seasonably furnish

4

reasonable proof that the assignment has been made *and unless he does so the account debtor may pay the assignor*." (Emphasis added.) This language allows the account debtor to continue paying the assignor if the account debtor is not furnished with reasonable proof of the assignment. It clearly dictates that the account debtor must make all payments to the assignee once the account debtor has received reasonable notice of the assignment. It would not be necessary to stipulate the terms under which an account debtor may continue to pay the assignor if the account debtor were not normally required to submit payments to the assignee.

**{¶ 14}** Here, Roslovic made payments in the amount of $159,972.22 directly and solely to Mascrete after having received proper notice of the assignment to First Bank. Roslovic argues that it was entitled to make the payments under the terms of the contract, which allowed Roslovic to make payments on all claims for labor. However, there were no claims made against Mascrete for failure to pay for labor. Therefore, the payments made directly to Roslovic were in violation of the assignment because they were not made in accordance with the claims exception contained in the contract.

**{¶ 15}** Roslovic claims that the payments made directly to Mascrete do not violate the terms of the assignment executed between First Bank and Mascrete on May 27, 1994. However, the language of R.C. 1309.37 and supporting case law clearly establish that an account debtor is liable to an assignee for payments made to an assignor after the account debtor receives sufficient notice of the assignment. Roslovic is therefore liable to First Bank for the sums paid to Mascrete, as those payments violated the terms of the assignment executed between Mascrete and First Bank.

**{¶ 16}** For all of these reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

DOUGLAS, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

RESNICK and PFEIFER, JJ., dissent.

_____

**LUNDBERG STRATTON, J., concurring.**

{¶ 17} I completely agree with the majority and write only to address some issues raised by Roslovic.

{¶ 18} The law is clear. Roslovic, as an account debtor, should have made the payments to First Bank of Marietta once it received proper notice of the assignment. However, Roslovic argues that since the payments actually went to pay labor, it should be absolved of all liability. Further, Roslovic argues that it was merely protecting its own interests. Roslovic claims that the bank was being unreasonable and, if laborers and materialmen had not been paid, the job would have folded. But, although we are sympathetic to these arguments, none of them constitutes a legal defense to a failure to honor the assignment.

{¶ 19} First of all, the lender might never have been willing to make this risky loan without the security and control of an assignment as provided by R.C. 1309.37(C). Therefore, Roslovic needed Mascrete to secure financing in the first place to complete the job. Otherwise, the job would simply have folded earlier.

{¶ 20} Second, the contract, as well as R.C. 1311.15, made specific provisions for payment directly to labor and materialmen. Roslovic initially followed this procedure but then abandoned the effort. Had Roslovic continued to follow the procedure, Roslovic would have been protected. But Roslovic gambled and, for its own convenience, decided simply to pay Mascrete directly.

{¶ 21} Third, strict construction of this statute preserves the goals of commercial stability and reliability. Lenders are willing to enter riskier deals if a good assignment is in place that creates solid incentives for an account debtor to comply with its terms. To judicially carve out an exception that permits an account debtor to ignore the assignment if it *believes* or *trusts* that the assignor will use the

money as promised throws assignments into a gray area where litigation will be required to prove how the money was eventually used. This case is a good example. A full trial was necessary to establish where the payments went. Most of Mascrete's records, however, had been destroyed. So, the only proof was Mascrete's word. Lenders will not lend in such an uncertain climate that depends on litigation for resolution. Such an exception for actual payment to laborers, even if it is desirable, should be created by the legislature, not the courts.

{¶ 22} The incentive for the account debtor to honor the assignment is the penalty that the account debtor will be assessed for payments made directly to an assignor. Equity and quantum meruit are not defenses to payments made in violation of the notice, nor is the difficulty of compliance or the demands of the assignee a defense. While this may appear to place a heavy burden on Roslovic to pay twice (as Mascrete is presumably insolvent), it was Roslovic that decided to take the risk of direct payment to avoid a difficult situation despite the language of R.C. 1309.37(C) and proper notice. The statute allows no exceptions. Therefore, Roslovic's justifications do not rise to the level of a legal defense. Sympathetic as its position may be, the law requires Roslovic's accountability. Therefore, I concur and join the majority's decision.

———————————