AMERICAN INSURANCE COMPANY

v.

CUYAHOGA COMMUNITY COLLEGE DISTRICT;
Ohio Department of Administrative Services.

2002-Ohio-3513.]

Court of Claims of Ohio.

No. 2001–02911–PR.

Decided May 31, 2002.

David C. Olson, for plaintiff.

Schottenstein, Zox & Dunn Co., L.P.A., and Alan G. Starkoff; and Lisa S. Koo, for defendant and third-party plaintiff Cuyahoga County Community College District.

Betty D. Montgomery, Attorney General, and Randall W. Knutti, Assistant Attorney General, for third-party defendant Ohio Department of Administrative Services.

J. WARREN BETTIS, Judge.

{¶ 1} This case has been submitted to the court for decision upon stipulated facts, trial briefs and oral arguments. Plaintiff brings this action against defendants alleging claims for relief under Article 9 of the Uniform Commercial Code (R.C. 1309.01 et seq.) and for impairment of its rights as a surety.

{¶ 2} In 1996, third-party defendant, Ohio Department of Administrative Services ("ODAS"), as the statutory contracting agent for defendant and third-party plaintiff, Cuyahoga Community College District ("CCC"), entered into a contract with J.P. Sorma Construction Co., Inc. ("Sorma") for the construction of a school building. Although CCC was not required by law to be a signatory to the contract between ODAS and Sorma, CCC did hire Ozanne Construction Company, Inc. ("Ozanne") as its construction manager for the project. The total contract price was $10,058,900.

{¶ 3} Thereafter, on June 5, 1996, plaintiff, American Insurance Company ("AIC"), entered into a general indemnity agreement with Sorma whereby AIC agreed to act as surety for Sorma with regard to various construction projects in which Sorma was involved, including the CCC project at issue herein. As surety, AIC issued a bid guarantee and contract bond in the full amount of $10,058,900 for the CCC project.

{¶ 4} In December 1997, Ozanne notified ODAS that Sorma had not paid several subcontractors and vendors even though Sorma had received sufficient funds to make those payments. Thereafter, ODAS notified Sorma that it had "failed to prosecute the work with the necessary force" as required by the contract. Sorma's contract was subsequently terminated "for convenience," pursuant to general conditions of the contract. Accordingly, ODAS withheld payments to Sorma for work that it had completed on the project, pending a determination of the fair and reasonable compensation for that work. Plaintiff does not challenge the appropriateness of the termination.

{¶ 5} Negotiations regarding this determination lasted one full year. However, as a result of negotiations between ODAS, Ozanne, and Sorma it was agreed

that Sorma would be paid the sum of $300,000 for its pretermination profit on the CCC project. The executed settlement agreement was filed with this court in January 1999. This court's journal entry approving settlement provides that ODAS pay Sorma $150,000 and CCC pay the remaining $150,000. The court's entry further provided that the settlement monies were to be paid from funds withheld from Sorma on the CCC project.

{¶ 6} While the negotiations on the settlement were ongoing, AIC received and paid claims against the contract bond for work related to the CCC project and other projects undertaken by Sorma. In toto, AIC paid more than $900,000 to the various claimants. Thereafter, AIC sued Sorma in the court of common pleas to recover its losses under the general indemnity agreement. Judgment was entered in favor of AIC and against Sorma on September 15, 1999, in the amount of $557,068.53.

{¶ 7} In accordance with the settlement agreement, ODAS and CCC made their respective payments to Sorma. However, Julius Sorma, a principal of the company, negotiated the settlement money drafts and thereafter refused to turn over the proceeds to AIC. To date, AIC has not recovered any of those funds.

{¶ 8} AIC claims that defendants violated R.C. 1309.37(C)[1] (UCC 9–318) by making unauthorized payments directly to Sorma after receiving notice that those payments had been assigned to AIC and therefore that defendants are now subject to liability to AIC for the full amount of such unauthorized payments. See *First Bank of Marietta v. Roslovic & Partners Inc.* (1999), 86 Ohio St.3d 116, 712 N.E.2d 703, at the syllabus (payments made by an account debtor to an assignor of accounts receivable after receiving sufficient notice of an assignment violate the assignment, thus subjecting the account debtor to liability to the assignee for payments made to the assignor). If plaintiff's argument is correct, then defendants must pay twice for the same work, once to Sorma and again to AIC.

{¶ 9} Inasmuch as plaintiff's first claim for relief is predicated upon the application of the Uniform Commercial Code ("UCC") as adopted in Ohio, the threshold legal issue in this case is whether those provisions apply herein. R.C. 1309.04 (UCC 9–104) provides:

---

1. {¶ a} R.C. 1309.37(C) was repealed effective July 1, 2001. R.C. 1309.404 (UCC 9–404) now covers "rights acquired by assignee; claims and defenses against assignee." However, at the time of the transfer at issue, R.C. 1309.37(C) provided:

{¶ b} "(C) The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignee."

{¶ 10}  "Sections 1309.01 to 1309.50 of the Revised Code do not apply:

{¶ 11}  "* * *

{¶ 12}  "(D) to a transfer by a governmental subdivision or agency;  or * * *."[2]

■  {¶ 13}  As a general rule of construction, it is only where a statute is ambiguous that a court may look beyond the language of the statute to determine its meaning.  See R.C. 1.49.  In the view of the court, the plain language of R.C. 1309.04(D) clearly and unambiguously exempts the transfer at issue in this case from the operation of Article 9. Therefore, the provisions of R.C. 1309.37(C) do not apply, and defendants cannot be liable to plaintiff as an account debtor.

■  {¶ 14}  Nevertheless, plaintiff argues that the unofficial comments to UCC 9–104 suggest otherwise.  As stated above, however, the court is not authorized to determine legislative intent under circumstances where the intent is clear from the language of the statute.  Moreover, as defendants note, the comments to Article 9 have not been enacted into law by the Ohio General Assembly.  Consequently, even if the court were to agree that the unofficial comments mean what plaintiff claims they mean, the court may not refer to the comments under circumstances where the legislative intent is clear from the plain language of the statute.

■  {¶ 15}  Plaintiff next argues that defendants are judicially estopped from taking the position that Article 9 does not apply to transfers by the state where plaintiff has previously persuaded this court in another action that Article 9 applies to transactions with the state.  The doctrine of judicial estoppel forbids a party to take a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.  " 'The doctrine applies only when a party shows that his opponent (1) took a contrary position;  (2) under oath in a prior proceeding;  and (3) the prior position was accepted by the court.' "  *Smith v. Dillard Dept. Stores, Inc.* (2000), 139 Ohio App.3d 525, 533, 744 N.E.2d 1198, quoting *Griffith v. Wal–Mart Stores, Inc.* (C.A.6, 1998), 135 F.3d 376, 380 and *Teledyne Indus., Inc. v. Natl. Labor Relations Bd.* (C.A.6, 1990), 911 F.2d 1214, 1217.

■  {¶ 16}  Initially, the court doubts whether the doctrine applies in this case in view of the substantial case law holding that there can be no estoppel against the state.  See, e.g., *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 146, 555 N.E.2d 630.  Nevertheless, plaintiff argues that *State ex.*

---

**2.**  The relevant language now appears in R.C. 1309.109 as follows:  "(D) This chapter does not apply to:  * * * (14) A transfer by a government, state, or governmental unit."

*rel. Celebrezze v. Tele–Communications, Inc.* (1990), 62 Ohio Misc.2d 405, 601 N.E.2d 234, creates such an estoppel in this case. In *Tele–Communications,* the state sought to invalidate a lease agreement on the grounds that the transaction was, in actuality, a "conditional sale" that should have been subject to the mandatory competitive bidding process. In determining that the transaction was in fact a lease, the court referred to the filing requirements of Article 9. The court, however, did not apply Article 9 against the state in that case or otherwise hold that Article 9 applies to contracts with the state. Moreover, it is impossible to tell from the language of the decision whether any witness for the state actually adopted a position regarding the applicability of Article 9 or whether the state even argued this point during the proceedings. Additionally, the state lost the case. Consequently, even if judicial estoppel is available against the state, the prerequisites for its invocation have not been established herein.

{¶ 17} To the extent that plaintiff argues that the *Tele–Communications* case stands for the proposition that Article 9 applies in determining the liability of the state, that argument is also without merit. As addressed above, this court in *Tele–Communications,* supra, did not determine or even address the issue whether Article 9 would control in any potential action against the state by an assignee. The dispositive issue in the *Tele–Communications* case was whether the transaction at issue was an Article 2 sale or an Article 2A lease. Neither Article 2 nor Article 2A contains any analogous exclusion relating to transactions with the state. In short, the *Tele–Communications* decision is both legally and factually distinguishable from this case.

{¶ 18} For the foregoing reasons, the court finds that defendants are not subject to liability to plaintiff as an "account debtor" pursuant to R.C. 1309.37(C) and *Roslovic,* supra. Having determined that defendants cannot be held liable to plaintiff as an account debtor, other defenses asserted by defendants such as lack of notice, failure to mitigate, and the preclusive effect of the prior settlement are moot.

{¶ 19} Plaintiff also asserts a common-law claim for impairment of plaintiff's rights under the bond and the general indemnity agreement. In support of this claim, plaintiff relies upon certain provisions of the Restatement of Suretyship and Guarantee. Plaintiff, however, has not pointed the court to a single Ohio authority either adopting or applying those provisions. Consequently, plaintiff's claim lacks legal support. Plaintiff has also failed to point the court to any common-law or statutory remedy available against the state under the circumstances of this case.

{¶ 20} Upon review, the court finds that plaintiff's claim is essentially a claim for equitable subrogation over which this court does not have jurisdiction. See *Community Ins. Co. v. Dept. of Transp.* (2001), 92 Ohio St.3d 376, 750 N.E.2d

573 (claims for subrogation are not cognizable against the state in the Court of Claims).

{¶ 21} Having determined that the transfer at issue is not subject to the provisions of R.C. 1309.37(C) and that a common-law cause of action is not available to plaintiff, judgment is rendered in favor of defendants.

Judgment for defendants.

J. WARREN BETTIS, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.