DECISION
{¶ 1} Plaintiff-appellant, Zenfa Labs, Inc., has filed this appeal from a decision of the Franklin County Court of Common Pleas granting summary judgment for defendant-appellee, Big Lots Stores, Inc.
 {¶ 2} Zenfa initiated this matter with a complaint in the Franklin County Court of Common Pleas bringing claims for breach of contract and violation of R.C. 1309.37(C), the statute governing duties of debtors when an account underlying a debt is assigned to a third party. Zenfa generally alleged that Big Lots had failed to pay to Zenfa on an invoice which had been assigned to Zenfa by Fisher Health Products, Inc., and had instead paid Fisher directly on the invoice. Big Lots filed an answer asserting various defenses and bringing a third-party claim against Fisher. Fisher has apparently not answered or otherwise appeared in the case.
 {¶ 3} The transactions underlying this dispute began with the sale by Fisher to Big Lots of $81,000 worth of personal deodorant products. The sale was effected through Fisher's manufacturer's representative, LL Sales, and delivery was made in June 1997. On June 18, 1997, Fisher invoiced Consolidated Stores Corp., Big Lots' parent company, for the full amount, payable in 30 days. Immediately thereafter, on June 20, 1997, Fisher executed a written agreement assigning the Big Lots invoice to Zenfa, apparently as part of a larger factoring agreement. This assignment was executed through a written instrument providing as follows:
 {¶ 4} "For goods [sic] and valuable consideration, we Fisher Products Inc., hereby sell and transfer the account receivable in the amount of $81,000.00 US. As evidenced by Invoice #1201.
 {¶ 5} "We hereby direct Consolidated Stores Corporation to pay directly to Zenfa Labs Inc., 6725 Pacific Circle Mississauga, Ontario L5T1S6 PHONE: (905) 564-9293/FAX: (905) 564-3166 the proceeds of this Invoice. The purchase order corresponding to this Invoice No. 1201 to Consolidated is PO# 34463-10M."
 {¶ 6} Apparently within hours of executing the written assignment, disagreements arose between the principals of Zenfa and Fisher, and the president of Fisher, Adalbert Pesch, verbally notified Zenfa that he revoked assignment of the Big Lots invoice. Fisher thereafter issued a new invoice to Consolidated, on June 24, 1997, specifying that payment should be made to Fisher and offering a two percent discount if payment was received within ten days. Big Lots paid the invoice in full on June 27, 1997, taking the two percent discount. In the interim, on or about June 20, 1997, Zenfa attempted to send via fax a notice of the assignment of the Fisher invoice, informing Big Lots that payment should be made to Zenfa pursuant to the assignment. It is an unresolved question of fact in this case whether Big Lots ever received this notice of assignment.
 {¶ 7} While Big Lots and Consolidated appear to have their principal places of business in Ohio, both Fisher and Zenfa are Canadian entities with addresses in Mississauga, Ontario.
 {¶ 8} The parties presented the trial court with cross-motions for summary judgment. The trial court thereafter denied a motion filed by Zenfa seeking to strike Big Lots' reply memorandum as exceeding the scope of issues presented in Big Lots' initial memorandum in support. The trial court then granted summary judgment in favor of Big Lots, initially finding that various documents filed by Zenfa in support of summary judgment were not verified and thus would not be considered. The trial court then found that the assignment of the invoice by Fisher to Zenfa had not been supported by consideration and could not be enforced by Zenfa.
 {¶ 9} Zenfa has timely appealed and brings the following assignments of error:
 {¶ 10} "[1] The Trial Court Erred As A Matter Of Law In Granting Defendant-appellee's Motion For Summary Judgment Because Defendant-appellee Never Pled The Affirmative Defense Of Failure Of Consideration In Its Answer Or Amended Answer And Thereby Waived The Defense.
 {¶ 11} "[2] The Trial Court Erred As A Matter Of Law In Granting Defendant-appellee's Motion For Summary Judgment On The Ground That The Assignment Between Plaintiff-appellant And Fisher Health Products, Inc. Was Not Given In Exchange For Valuable Consideration Because Plaintiff-appellant Presented Evidence In Its Memorandum In Opposition That Established That The Assignment Was Given In Exchange For Valuable Consideration.
 {¶ 12} "[3] The Trial Court Erred As A Matter Of Law And Abused Its Discretion By Denying Plaintiff-appellee's [sic] Motion To Strike Defendant-appellee's Reply Memorandum Because Defendant-appellee's Reply Memorandum Presented New Legal Arguments Not Previously Raised In Its Motion For Summary Judgment.
 {¶ 13} ["4] The Trial Court Erred As A Matter Of Law By Denying Plaintiff-appellant's Motion For Summary Judgment Because Fisher Health Products, Inc. Had Assigned Its Right To Payment From Defendant-appellee To Plaintiff-appellant And Defendant-appellee Received Notice Of The Assignment, The Assignment Contained A Specific Direction That Payment Was To Be Made Directly To Plaintiff-appellant, And The Assignment Contained A Reasonable Identification Of The Rights That Had Been Assigned To Plaintiff-appellant."
 {¶ 14} The present matter was decided on summary judgment. Civ.R. 56(C) states that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." * * *
 {¶ 15} Accordingly, summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. "The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial.
 {¶ 16} Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. Dresher, supra; Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38.
 {¶ 17} Essentially, two substantive issues are presented in the present case: first, whether the assignment from Fisher to Zenfa constituted a binding and enforceable contract, or whether it failed for lack of consideration, mutual rescission, justifiable anticipatory repudiation by Fisher, or other reasons; and, second, whether Big Lots received proper notice of the assignment and consequently pursuant to R.C. 1309.37(C) could not discharge its obligation on the invoice by paying Fisher, which no longer had any rights thereunder.
 {¶ 18} Zenfa's first assignment of error asserts that the trial court erred in allowing Big Lots to argue that the assignment from Fisher to Zenfa failed for lack of consideration. Zenfa argues that failure of consideration is an affirmative defense that must be pleaded in a defendant's answer, and that Big Lots did not do so in the present case. Big Lots responds that, as to it, failure of consideration is not an affirmative defense because Big Lots was not a party to the contract of assignment and does not claim to have failed to receive consideration owed to it under the terms of the agreement; rather, Big Lots argues, the lack of consideration to Fisher is merely the factual reason for which the assignment to Zenfa fails and does not affect Big Lots' contractual obligation to pay Fisher for the goods received.
 {¶ 19} The question of whether failure of consideration constitutes an affirmative defense under these circumstances is an interesting one which we will not, however, decide in the present appeal, because the trial court was denied the opportunity to do so below. Generally, failure to raise an issue in the trial court will waive a litigant's right to raise that issue upon appeal. State v. Comen (1990), 50 Ohio St.3d 206, 211. The foundation for this rule is that parties should not be foreclosed from having an opportunity to try issues not fully litigated in the lower court or issues upon which the lower court made no express finding. Crestmont Cleveland Partnership v. Ohio Dept. of Health (2000), 139 Ohio App.3d 928. In the present case, while Zenfa did move to strike Big Lots' reply memorandum in support of summary judgment on the basis that the failure of consideration argued therein was outside the scope of the initial memo in support, Zenfa never raised before the trial court the question of whether failure of consideration was an affirmative defense which should have been pleaded in Big Lots' answer. Big Lots was accordingly not given the opportunity to amend its pleadings or otherwise remedy any alleged deficiency in this respect, and it would be inappropriate to allow Zenfa to preclusively raise this issue now upon appeal. Zenfa's first assignment of error is accordingly overruled.
 {¶ 20} Zenfa's second assignment of error asserts that the trial court erred in finding that there remained no material question of fact on the issue of whether the assignment from Fisher to Zenfa was supported by adequate consideration. In concluding that no consideration had been given, the trial court first found that certain documents presented with Zenfa's memoranda were unverified and inadmissible as evidence in support of or opposition to summary judgment under Civ.R. 56. Zenfa has not appealed this aspect of the trial court's decision. Most of the documents concerned, however, can be found elsewhere in the record as duplicative submissions by Big Lots. Since Zenfa has not argued error on the trial court's part in finding that some documents submitted were inadmissible, we will consider only those documents which are indisputably admissible in reviewing the propriety of summary judgment.
 {¶ 21} Initially, we note a curious point in this case that neither party has urged the application of Canadian law upon either the trial court or this court in any aspect of the matter, and particularly in addressing the validity and effect of the assignment executed between Fisher and Zenfa. As to most of the case, particularly those aspects dealing with transactions between Big Lots and Zenfa and Big Lots and Fisher, application of Ohio law seems appropriate, particularly as no one has argued otherwise. With respect to the dealings between Zenfa and Fisher, however, which constitute a contract executed between two Canadian entities dealing with each other in Canada, application of Ohio contact law appears problematic. Generally, in the absence of a choice-of-law-clause, Ohio courts will decide the issue of applicable law by assessing which jurisdiction has the most significant relationship to the transaction and the parties, considering the following: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Gries Sports Enterprises, Inc. v. Modell (1984), 15 Ohio St.3d 284, syllabus, adopting Section 188 of I Restatement of the Law 2d, Conflicts of Law. Assessment of these factors on the present facts would strongly militate for assessment under Canadian contract law of the dealings between Zenfa and Fisher. Nonetheless, the parties have both argued the case in the apparent expectation that this aspect will be decided under Ohio law, apparently willing to accept any res judicata or collateral estoppel consequences, were subsequent litigation between those parties to arise in their home jurisdiction. In accordance with the apparent expectations of the parties, therefore, we will consider the matter under contract principles set forth in the law of Ohio.
 {¶ 22} Zenfa does not propose that it be permitted to pursue collection of the assigned invoice if the underlying assignment were to fail due to rescission, failure of consideration, fraud, or any other contractual infirmity. Zenfa's argument is limited to the proposition that there remained a material issue of fact as to whether consideration was given for the assignment and, if the promised consideration was not made good by Zenfa, whether this is excused by a previous breach by Fisher, which pursued collection from Big Lots despite the prior assignment.
 {¶ 23} Three principal pieces of evidence are before the trial court regarding the contract of assignment. The most significant was the written document set forth above, under which Fisher "for goods [sic] and valuable consideration" transferred the account receivable evidenced by the Big Lots invoice, and explicitly directed Consolidated to pay Zenfa directly. This document bears the signature of Adalbert Pesch, President of Fisher Health Products, Inc., and Yezdi Guard, on behalf of Zenfa Labs, Inc. The document manifests no further conditions or terms relating to the transaction. It is embossed with a seal which appears to be that of Fisher Health Products, Inc.
 {¶ 24} Also found in the record is the deposition of Adalbert Pesch, in which he states as follows:
 {¶ 25} "Q. At any time did Fisher assign the right to payment for Defendant's Exhibit 2 to anyone besides Fisher?
 {¶ 26} "A. Yes, we did. But we took it back.
 {¶ 27} "Q. Can you tell me the circumstances surrounding the — I'll put it in quotes, `The assignment that was taken back.'
 {¶ 28} "A. Well, the assignment — I signed the letter to Zenfa Labs to get payment of $81,000, I don't know what, the 20th of June. And a few hours after I signed this, it came to my attention that Mr. Yezdi Guard was the principal of Zenfa Labs and misrepresented himself to us. And we — I informed him that we're not going to go through with this deal.
 {¶ 29} "Q. Okay. Let me have you put in front of you what's been marked Defendant's Exhibit No. 5. Do you have that?
 {¶ 30} "A. Yes, I do.
 {¶ 31} "Q. Can you identify that for me, please?
 {¶ 32} "A. Yeah. That's the letter I signed.
 {¶ 33} "Q. Okay.
 {¶ 34} "A. On June the 20th.
 {¶ 35} "Q. And your testimony is that hours after signing this, you revoked it?
 {¶ 36} "A. That's right.
 {¶ 37} "Q. And what was the reason for revoking it?
 {¶ 38} "A. Zenfa Labs misrepresented themselves to me, and I found out only after I signed this letter."
 {¶ 39} In contrast to this account by Mr. Pesch, excerpts from the deposition of Yezdi Guard, attached to Big Lots' memoranda in the trial court, give, not surprisingly, a diametrically opposed account of the breakdown in business dealings between Fisher and Zenfa:
 {¶ 40} "At that point, I knew that man was playing games and that I wasn't going to get my money. That's what happened. That's when we severed the relationship. I knew right away what he was up to. And he had totally lost control at that point.
 {¶ 41} "Q. Okay. So it sounds like the business relationship between Zenfa and Fisher was this one time transaction?
 {¶ 42} "A. Well, it was. And we had some previous transactions as well where he wanted to buy packaging material. We used to assist him with cash flow. We used to pay his employees. We've done other business. We helped him financially.
 {¶ 43} "* * *
 {¶ 44} "Q. Has Zenfa done any other business with Fisher since the Consolidated deal?
 {¶ 45} "A. No, we haven't.
 {¶ 46} "* * *
 {¶ 47} "A. Ever since they denied payment, we just stopped everything. We just did not continue.
 {¶ 48} "Q. Is there litigation or has there been litigation between Zenfa and Fisher?
 {¶ 49} "A. Yes. We are right now going through all that. I've engaged a lawyer, and we're going to be proceeding with criminal charges, actually. Because, I mean, there is blatant fraud according to my attorney, and he wants to pursue that."
 {¶ 50} An assignment of accounts or contract rights is a contract in itself, and like other contracts, requires elements indicating an intent to conclude a binding agreement. Bennett v. American Electric Power Service Corp. (Sept. 27, 2001), Franklin App. No. 01AP-39. Under Ohio law, contract formation requires mutual assent and consideration. Nilaver v. Osborn (1998), 127 Ohio App.3d 1, 11. An express contract exists when the parties assent to the terms of the contract is expressed by an offer and acceptance, which may be embodied in the same document. Legros v. Tarr (1989), 44 Ohio St.3d 1. In addition to such mutual assent and consideration, the conduct of the parties must evidence a meeting of the minds, and the essential terms of the contract must be definite and certain. Nilaver, at 11. In a contract other than one for the sale of goods, these essential terms generally include identification of the parties and the subject matter of the contract. Id. at 13. The terms of the contract are certain if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Mr. Mark Corporation v. Rush, Inc. (1983), 11 Ohio App.3d 167, 169.
 {¶ 51} The document purporting to assign Fisher's rights in the Big Lots' invoice to Zenfa is sufficiently definite in its terms to constitute a contract. Although Mr. Pesch's deposition indicates that no such intent to assign was ever finalized, the existence of a document over his signature purporting to create such an assignment at the very least creates a material issue of fact on this question. Again according to Mr. Pesch, even if the assignment is held initially valid, it must be deemed ineffective because he revoked it within hours of signing the document, apparently because of alleged misrepresentation on the part of Zenfa's principal, Mr. Guard. In contrast, Mr. Guard's deposition places the onus upon Fisher for breach of contract of assignment. We find that there remains a material issue of fact, based upon this contradictory evidence, on the question of whether a binding contract of assignment was concluded between the parties, and whether the attempted cancellation of that contract by Fisher was effective.
 {¶ 52} Even in the absence of the statements by Mr. Guard, Mr. Pesch's claim to have unilaterally rescinded the assignment, absent more specific grounds for such an anticipatory repudiation, might well leave a material issue of fact in the case regarding whether the attempted revocation by Mr. Pesch on behalf of Fisher was warranted, or, rather, constituted a breach on his part of the contract of assignment.
 {¶ 53} Assessing the documentary or testimonial evidence before the trial court, therefore, we find that there subsists a material issue of fact in the case regarding the validity and effect of the assignment between Fisher and Zenfa, and consequently a material issue of fact regarding Zenfa's right to pursue collection of the invoice from Big Lots. The trial court therefore erred in granting summary judgment for Big Lots on the basis that the contract of assignment failed for lack of consideration. Zenfa's second assignment of error is therefore sustained.
 {¶ 54} Zenfa's third assignment of error asserts that the trial court erred in denying Zenfa's motion to strike Big Lots' reply memorandum in support of summary judgment. Our resolution of the other assignments of error in this case renders this assignment of error moot, and it need not be further addressed.
 {¶ 55} Appellant's fourth assignment of error asserts that the trial court erred in granting summary judgment to Big Lots and denying summary judgment to Zenfa, because R.C. 1309.37(C) clearly requires Big Lots, as the debtor on the invoice, to pay Zenfa, as the assignee, once Big Lots had received notice of the assignment.
 {¶ 56} Under R.C. 1309.37(C), Big Lots was required to pay Zenfa if notice of the assignment was received: " `Payments made by an account debtor to an assignor of accounts receivable after receiving sufficient notice of an assignment violate the assignment, thus subjecting the account debtor to liability to the assignee for the payments made to the assignor.' " Commercial Savings Bank v. City of Jackson (Sept. 12, 2000) Jackson App. No. 00CA007, quoting First Bank of Marietta v. Roslovic Partners, Inc. (1999), 86 Ohio St.3d 116, syllabus. Under the general definitions of the UCC, an organization "receives" a notification when it is delivered to any place "held out by [it] as the place for receipt of such communications." R.C. 1301.01(Z)(2). A notification received by an organization is effective from the time it would have been brought to the attention of the individual conducting the transaction "if the organization had exercised due diligence." R.C. 1301.01(AA).
 {¶ 57} Because of the contradictory evidence in the present case regarding receipt of the notice of assignment, there remains a material issue of fact on the question of whether Big Lots was required to pay the assignee, Zenfa, or whether Big Lots could discharge its obligation on the invoice by paying the original account holder, Fisher. Zenfa presented evidence that it had duly faxed notice of the assignment to the telephone number that Consolidated/Big Lots held out as appropriate for delivery of such notices, and that this notice had been sent long enough before Big Lots made payment to Fisher that, with the exercise of organizational due diligence, the assignment should have come to the attention of persons charged with assuring payment to the correct party. Big Lots presented evidence that it had not, in the course of its usual business routine in such matters, received, logged, or filed the notice sent by Zenfa. The evidence is fundamentally contradictory and so the issue cannot be resolved without resorting to an assessment of credibility. The trial court therefore erred in granting summary judgment for Big Lots on the basis that Big Lots never received notice of the assignment pursuant to R.C. 1309.37(C). To the extent that Zenfa's fourth assignment of error asserts error in this respect, it is sustained.
 {¶ 58} To the extent, however, that Zenfa asserts that the trial court erred when it failed to grant summary judgment for Zenfa on this question, the assignment of error is overruled. Denial of a motion for summary judgment, with certain exceptions not present in the case before us, is not a final, appealable order. State ex rel. Overmeyer v. Walinski (1966), 8 Ohio St.2d 23.
 {¶ 59} In summary, appellant's first assignment of error is overruled, appellant's second assignment of error is sustained, appellant's third assignment of error is rendered moot, and appellant's fourth assignment of error is sustained in part and reversed in part. The matter is remanded to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
TYACK and BROWN, JJ., concur.