OPINION
{¶ 1} Plaintiff-appellant, First Bank of Marietta, appeals from a decision and judgment of the Franklin County Court of Common Pleas. Defendant-appellee, Roslovic Partners, Inc., has filed a cross-appeal, and the law firm of Kegler, Brown, Hill 
Ritter, appearing on motion in the trial court and as an appellee before this court, has filed a brief in support of that portion of the trial court's judgment that awards a charging lien for past legal services provided by the firm.
 {¶ 2} Although the facts of this case have been extensively recited in prior decisions of this and other courts, a fairly developed reiteration of both those facts and the substance of prior court decisions is unfortunately necessary to establish the posture of the matter and, if possible, allow a final resolution of a case that has without a doubt carried the judicial process long past the point of diminishing returns for all concerned.
 {¶ 3} The underlying dispute arises out of a 1994 construction contract and a related assignment of rights therein. Roslovic Partners, Inc. ("Roslovic") acted as a general contractor on behalf of the property owner, Glimcher Properties Limited Partnership ("Glimcher"), for the construction of two Lowe's Home Center stores in central Ohio in 1994. Roslovic subcontracted the concrete work on both jobs to Mascrete, Inc. ("Mascrete"). Mascrete obtained financing from appellant First Bank of Marietta ("First Bank") in exchange for an assignment of amounts receivable by Mascrete under its contract with Roslovic.
 {¶ 4} When Mascrete eventually experienced financial difficulties, Roslovic became concerned that Mascrete's laborers, suppliers, and subcontractors would not be paid and Mascrete would be unable to fulfill its portion of the work. Roslovic, as was provided for in its contract with Mascrete, undertook to directly pay some of Mascrete's suppliers on the Lowe's projects in order to ensure completion of the concrete work and protect Roslovic's position under its contract with Glimcher. First Bank, as Mascrete's assignee, informed Roslovic that all amounts payable to Mascrete should be paid directly to First Bank pursuant to the assignment. Nevertheless, Roslovic continued to pay Mascrete's suppliers, and eventually paid directly to Mascrete a series of six checks totaling $159,972.20 for purposes of allowing Mascrete to pay its labor. Roslovic's position at the time, as expressed in its communications with First Bank, was that Roslovic had the explicit right, under its contract with Mascrete, to make these payments and then later deduct them from any amount ultimately due to Mascrete under the contract. Roslovic also contended that it had been forced to perform certain work itself that Mascrete was contractually obligated to perform and that a corresponding amount would also eventually be deducted from any amounts payable to Mascrete under the contract.
 {¶ 5} At least three lawsuits ensued from these disagreements and alleged breaches between the parties.
 {¶ 6} The first action, a separate case from the one before us, saw First Bank file suit in the Washington County Court of Common Pleas seeking a garnishment protecting First Bank's rights as assignee of Mascrete's right to payment under the contract with Roslovic, and enjoining further payments by Roslovic directly to Mascrete. Roslovic nonetheless made two $10,000 payments, the final two checks of the six totaling $159,972.20 described above, to Mascrete after the garnishment order was served. The Washington County Court of Common Pleas held that these payments were in violation of its garnishment order and the assignment, and entered a contempt judgment in the amount of $20,000, the amount of the improper payments. The substance of that judgment, after appeal and remand, was eventually upheld. This companion case affects the one before us only insofar as the effect of the payment of the Washington County contempt judgment upon amounts due in the present case is disputed.
 {¶ 7} In the two actions that directly underlie the present appeal, First Bank filed a complaint in the Franklin County Court of Common Pleas claiming that all payments made by Roslovic, whether to Mascrete itself or directly to Mascrete's subcontractors and suppliers, violated First Bank's rights as an assignee. First Bank sought judgment against Roslovic for all amounts owed by Roslovic to Mascrete that had not been paid directly to First Bank. First Bank also claimed in this action that Mascrete had performed extra work under its contract and was entitled to additional payments that would flow to First Bank under the assignment. Roslovic, in addition to answering the complaint filed by First Bank and denying the claims therein, filed its own action against Mascrete which was styled as an interpleader action but essentially constituted an action in contract to ascertain whether either Roslovic or Mascrete had breached their contract and what amounts remained payable between them. Mascrete does not appear to have actively defended this action or participated in subsequent proceedings, and is not represented in this appeal.
 {¶ 8} The two Franklin County cases were consolidated and tried in 1996. The trial court found in favor of Roslovic on all claims by First Bank, holding that none of the payments by Roslovic to Mascrete or its suppliers violated the assignment from Mascrete to First Bank. In addition, the trial court found in favor of Roslovic against Mascrete and found that Mascrete had been overpaid or otherwise owed Roslovic $45,350.41 under the contract.
 {¶ 9} Then-counsel for First Bank, Gene Holliker, withdrew as counsel before judgment was rendered in that proceeding; his unpaid legal fees, for which appellee Kegler, Brown, Hill 
Ritter ("Kegler") is the successor-in-interest, were not at issue in the first phases of the case but eventually formed the basis for the charging lien that is in dispute in the present case.
 {¶ 10} All aspects of this initial judgment were affirmed upon appeal to this court. First Bank of Marietta v. Roslovic Partners, Inc. (Apr. 21, 1998), Franklin App. No. 97APE09-1199 ("Roslovic I"). First Bank took an appeal from this court's decision to the Supreme Court and prevailed on a single issue: the Supreme Court found that Roslovic had violated the pertinent assignment statute, R.C. 1309.37(C) (at the time representing Ohio's version of former UCC 9-318), by making the labor payments totaling $159,972.20 directly to Mascrete after receiving notice of the assignment. First Bank of Marietta v. Roslovic Partners, Inc. (1999), 86 Ohio St.3d 116 ("Roslovic II"). The Supreme Court's holding was based on application of the existing law of assignment in Ohio and the terms of the contract between Roslovic and Mascrete:
"[R.C. 1309.37(C)] clearly dictates that the account debtor must make all payments to the assignee once the account debtor has received reasonable notice of the assignment. * * * Roslovic made payments of $159,972.22 [sic $159,972.20] directly and solely to Mascrete after having received proper notice of the assignment to First Bank. Roslovic argues that it was entitled to make the payments under the terms of the contract, which allowed Roslovic to make payments on all claims for labor. However, there were no claims made against Mascrete for failure to pay for labor. Therefore, the payments made directly to [Mascrete] were in violation of the assignment because they were not made in accordance with the claims exception contained in the contract. * * * [T]he language of R.C. 1309.37 and supporting case law clearly establish that an account debtor is liable to an assignee for payments made to an assignor after the account debtor receives sufficient notice of the assignment. Roslovic is therefore liable to First Bank for the sums paid to Mascrete, as those payments violated the terms of the assignment executed between Mascrete and First Bank."
Id. at 119.
 {¶ 11} The matter then returned to the trial court. Soon after the remand from Roslovic II, Kegler filed a motion for a charging lien in the Franklin County Court of Common Pleas, seeking attorney Holliker's unpaid fees. The trial court granted Kegler's motion for a charging lien in the amount of $46,854.99. The court then considered the question of whether any setoffs should be allowed from the amount determined by the Supreme Court to be owed by Roslovic to First Bank. The court allowed various setoffs, including bonding-off costs incurred by Roslovic due to Mascrete's non-performance or non-payment of suppliers, attorney fees in connection with releasing these bonds, prior payments made by Roslovic pursuant to orders in the Washington County case, and an award of costs and sanctions in favor of Roslovic against First Bank. The court entered final judgment in favor of First Bank in the amount of $94,621.81 to be paid by Roslovic. In a separate entry the court at that time also ordered that, of the judgment amount owed by Roslovic to First Bank, Roslovic should deduct the amount owed to Kegler under the charging lien and pay it directly to Kegler.
 {¶ 12} The matter was again appealed to this court. FirstBank of Marietta v. Roslovic Partners, Inc. (2000),138 Ohio App.3d 533 ("Roslovic III"). This court found that the trial court had abused its discretion in considering credits and setoffs applicable by Roslovic to amounts owed to First Bank without taking evidence on the question, that First Bank was entitled to a evidentiary hearing before being subjected to an award of costs and sanctions, and that an evidentiary hearing was also necessary regarding the appropriateness and amount of a charging lien in favor of Kegler. No appeal was taken from our decision in Roslovic III.
 {¶ 13} The matter was accordingly once again remanded to the Franklin County Court of Common Pleas. The trial court again considered issues regarding setoffs, credits for prior payments made by Roslovic, and the appropriateness of the charging lien. The previous award of sanctions against First Bank was not pursued.
 {¶ 14} The court again found that Kegler was entitled to a charging lien that attached to any amount owed by Roslovic to First Bank, and that the amount of $36,249.42 in fees and expenses was reasonable compensation for the services provided by Hollicker for his legal representation of First Bank in the first stages of the case, with interest to run from the time of filing of the motion for the charging lien.
 {¶ 15} The court identified those contractual setoffs that could be applied by Roslovic against the judgment: overpayments of $1,551.43 by Roslovic to Mascrete and $14,760 in costs incurred by Roslovic to bond-off liens filed by suppliers due to Mascrete's eventual default on its contract. The court did not allow as a setoff, however, the attorney fees claimed by Roslovic in connection with the bond expenses.
 {¶ 16} Turning to payments made and interest due on amounts owed by Roslovic, the court found that pursuant to its prior order Roslovic had tendered a payment of $46,854.99, representing the charging lien plus interest, jointly to First Bank and Kegler, and that First Bank had wrongfully refused to allow the payment to Kegler. The court found that this amount would be deducted from any principal amount accruing interest as if it had been properly accepted by First Bank at the time of tender. The court also found that a separate $31,070.42 payment from Roslovic to First Bank pursuant to the trial court's prior order would be set off against principal as of the date of payment. The court further found that the $20,000 paid in the Washington County garnishment action should be construed as damages and set off against the principal of any amount due by Roslovic to First Bank. The court also found in connection with the Washington County judgment that interest paid on that judgment, in the amount of $6,259.83, should be credited as a payment against interest accruing on the judgment in the present case.
 {¶ 17} Lastly, the court found that pre- and post-judgment interest on sums owed to First Bank by Roslovic, pursuant to the Supreme Court's decision in Roslovic II, would accrue on the labor checks from the time each check was wrongfully issued by Roslovic directly to Mascrete.
 {¶ 18} Based on the amount found by the Supreme Court to have been wrongfully paid, interest payable thereon, the various setoffs as applied to principal and interest, and the amounts and dates of payments made by Roslovic, the trial court arrived at a final sum owed from Roslovic to First Bank in the amount of $187,098.18
 {¶ 19} First Bank has appealed from the trial court's decision and has assigned the following assignments of error:
 ASSIGNMENT OF ERROR NO. 1:
The trial court erred in applying any offset to the $159,972.20 determined by the Ohio Supreme Court to be owed to First Bank by Roslovic. Burden of proof of offset was on the appellee Roslovic and Roslovic did not meet that burden. The judgment allowing the offset was against the manifest weight of the evidence and contrary to law.
 ASSIGNMENT OF ERROR NO. 2:
The trial court erred in excluding evidence of summaries.
 ASSIGNMENT OF ERROR NO. 3:
The trial court erred when it credited roslovic $20,000 plus interest for a payment it made to First Bank as a result of a contempt citation from the Washington County Common Pleas Court. The judgment was against the manifest weight of the evidence and contrary to law.
 ASSIGNMENT OF ERROR NO. 4:
The trial court erred in its calculations of interest due First Bank. The judgment was against the manifest weight of the evidence and contrary to law.
 ASSIGNMENT OF ERROR NO. 5:
The trial court erred, and abused its discretion, in concluding that First Bank's attorney was entitled to a charging lien. The granting of the charging lien in an hourly case when the attorney withdrew from representation in violation of the local court rule and the disciplinary rules was contrary to law.
 ASSIGNMENT OF ERROR NO. 6:
The trial court violated First Bank's Constitutional Right to have the former attorney's claim tried by a jury in a lawsuit.
 ASSIGNMENT OF ERROR NO. 7:
The granting of a charging lien, that does not comply with the Ohio prejudgment attachment statute R.C. § 2715.01 et seq. is Unconstitutional.
 ASSIGNMENT OF ERROR NO. 8:
The trial court erred in determining the amount of the lien.
 ASSIGNMENT OF ERROR NO. 9:
The trial court erred in awarding interest to the former attorney.
 {¶ 20} Roslovic has cross-appealed and brings the following assignments of error:
I. The trial court erred in violating the doctrines of res judicata and law of the case when it denied in the 2001 re-hearing a set-off for attorney's fees allowed by the trial court in 1996 after a full trial on the merits, affirmed by this court of appeals, and appealed no further by any party, which ruling and award, therefore, had become final.
II. The trial court erred in refusing to allow a set-off for the direct damages caused by Mascrete's breach of its contracts with Roslovic — the attorney's fees incurred in handling the liens filed by Mascrete's subcontractors and suppliers.
III. The trial court erred in holding that the set-offs for bond and other miscellaneous costs would be deducted from interest, not principal.
 {¶ 21} This case presents, broadly put, three classes of issues: (1) whether, and in what amount, contractual setoffs[1] in favor of Roslovic may be applied against the amount deemed by the Supreme Court to be owed by Roslovic to First Bank for payments in violation of the assignment; (2) the validity of the charging lien granted by the trial court in favor of Kegler against amounts payable to First Bank; and (3) the effect on the total amount due of various payments made, or at least tendered, by Roslovic to First Bank at various times during the pendency of this controversy. While these issues must, to a certain extent, overlap, it is most convenient for purposes of this decision to discuss them independently insofar as possible, and to address together the respective assignments of error of the parties concerning each issue.
 {¶ 22} In addition, it must be noted that in the present posture of the case we are confronted less with newly developed factual and legal distinctions than we are with the application and effect of the multiple prior decisions by the various courts that have addressed this matter. We accordingly are called to duly lay to rest without reopened debate those matters that have become res judicata through the application of the doctrine of the law of the case, and only decide those questions that are properly before us because they are not yet conclusively addressed and decided in prior decisions of this court or the Supreme Court.
 {¶ 23} We first address the issue of which setoffs, and in what amount, may be applied to the $159,972.20 determined by the Supreme Court to be owed to First Bank by Roslovic. This is the issue presented in First Bank's first assignment of error and Roslovic's first and second assignments of error.
 {¶ 24} First Bank asserts that no such setoffs should have been allowed at all, and Roslovic conversely asserts that no amount less than the original figure of $45,359.41 (based on the original judgment in favor of Roslovic against Mascrete and applied to First Bank as an assignee standing in the shoes of its assignor) should be allowed. Both parties rely upon res judicata to support their positions, and certainly it is an unfortunate result of the multiplicity of prior decisions by the courts in this case that language can be found to support each side of the debate. Reference to our most recent decision will predominantly guide us in the present one.
 {¶ 25} In Roslovic III we rejected First Bank's fundamental position that, because the Supreme Court had ordered a quantified monetary judgment in Roslovic II, no further alteration to that set amount could be made by lower tribunals without contravening the express mandate of the Supreme Court. We held in RoslovicIII that while the lower court is required to adhere to the higher court's determination of the applicable law and has no discretion to vary from the higher court's mandate, "this does not mean that the trial court cannot hear and determine facts that, as a result of the mandate, require resolution." RoslovicIII, 130 Ohio App.3d at 539, citing Nolan v. Nolan (1984),11 Ohio St.3d 1, 3. "Here, the factual findings of the amount of credits, setoffs, costs, and sanctions to be credited to Roslovic became ripe for decision once judgment was to be rendered in favor of First Bank against Roslovic." Id. "[W]hether certain adjustments and credits were due Roslovic was a question of fact to be determined after the submission of evidence." Id. at 540. "[S]hould the trial court decide that the $45,350.41, or any portion thereof, is related to the assignment from Mascrete to First Bank, it may then make an appropriate deduction * * * consistent with its finding." Id. at 543.
 {¶ 26} This court has therefore held that setoffs may be available to Roslovic if the evidence supports them. While First Bank continues to argue that Roslovic is not entitled to any adjustment whatsoever from the set and specific amount ordered by the Ohio Supreme Court in Roslovic II, our decision inRoslovic III continues to represent our best effort to apply the Supreme Court's mandate, and our determination in this respect, no appeal having been taken from Roslovic III,
represents the law of the case in this matter and shall not be revisited. As we stated in Roslovic III, "`the decision of a reviewing court in a case remains the law of that case on a legal question involved for all subsequent proceedings in the case at both the trial and appellate levels.'" Roslovic III, at 540, quoting Schneider v. Schneider (1992), 83 Ohio App.3d 423, 426.
 {¶ 27} For the same reason, we cannot accept Roslovic's sweeping res judicata argument that the original judgment of $45,350.41 obtained against Mascrete by Roslovic in 1997, left undisturbed by this court in Roslovic I, and never appealed on its own merits, has become res judicata and must be applied integrally against First Bank's rights as assignee. Our decision in Roslovic III ordering new review at the trial level of the setoffs is obviously inconsistent with any finding that Roslovic's judgment against Mascrete is inevitably and integrally to be applied against First Bank as a setoff, based solely on the existence of the judgment and First Bank's status as Mascrete's assignee.
 {¶ 28} Thus, on remand from Roslovic III, our mandate to the trial court was, first, that some setoff from the amount ordered by the Supreme Court was permissible, and, second, that such setoffs would be defined by the actions of the parties and Mascrete's (and thus its assignee First Bank's) rights under the contract between Mascrete and Roslovic. The trial court was to take evidence and determine which setoffs claimed by Roslovic were supported by the evidence and the language of the contract. Our review of this matter is limited to a determination of whether the trial court conformed with the mandate set forth in our prior decision, and whether the trial court's conclusions in carrying out that mandate are supported by the evidence.
 {¶ 29} Bound by our prior determination that setoffs were available, if proven, against the amount ordered by the Supreme Court, we will now examine the individual setoffs allowed by the trial court in its latest decision. Aside from the all-or-nothing res judicata arguments raised by the parties, the trial court's decision is also challenged on grounds that it is against the manifest weight of the evidence. When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the factual findings of the trial court were correct. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77. Thus, judgments supported by some competent, credible evidence going to all the essential elements will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Const. Co. (1978),54 Ohio St.2d 279.
 {¶ 30} While a review on manifest weight grounds requires great deference to the trial court's factual findings in assessing the weight of the evidence, interpretation of a contract is a question of law and on this issue, as with interpretation of applicable statutes, we will apply a de novo standard of review. Masterclean, Inc. v. Ohio Dept. of Adm.Servs. (May 13, 1999), Franklin App. No. 98AP-727.
 {¶ 31} Three items were reflected in the original 1997 judgment in favor of Roslovic against Mascrete of $45,350.41: Roslovic claimed expenses of $14,760 incurred to bond-off liens filed against the Lowe's projects by Mascrete's subcontractors and suppliers; Roslovic claimed $29,038.98 in attorney fees incurred to handle these liens and supplier claims, or related litigation; and, the trial court awarded an additional amount of $1,551.43 in credits owed by Mascrete for work or expenses incurred by Roslovic to complete Mascrete's concrete work on the Lowe's projects.
 {¶ 32} In the latest trial court decision from which this appeal is taken, the trial court allowed the miscellaneous amount of $1,551.43 and the $14,760 bond expense, but disallowed the amount claimed for attorney fees in connection with the bond costs.
 {¶ 33} Article X of the contract between Mascrete and Roslovic specifically provided that Mascrete, as subcontractor, agreed to turn over the work to Roslovic, as general contractor, "in good condition and free and clear from all claims, encumbrances and liens." Pursuant to this obligation on the part of Mascrete, Article X further provided that "[i]n case suit to establish lien is brought by any person, firm, or corporation, employed by, or furnishing material to, said Sub-Contractor, under this contract, Sub-Contractor will, at his own cost and expense (including attorney's fees), defend such suit and pay such liens established in court." (Emphasis added.) Article VIII of the contract contained a more general indemnification clause requiring Mascrete to "indemnify and save harmless [Roslovic] from and against all losses and all claims, demands, payments, suits, actions, recoveries and judgments of every nature and description brought or recovered against [Roslovic] by reason of any act or omission" in Mascrete's execution of the contract.
 {¶ 34} There was ample competent, credible evidence before the trial court to establish that Roslovic incurred both bonding-off costs and related attorney fees from Mascrete's failure to pay its suppliers and subcontractors and deliver the job clear of liens. In reviewing this evidence on a manifest weight basis, we find no reason to disturb the trial court's determination as to the applicability of bonding-off expenses as a setoff in favor of Roslovic. With respect to the attorney fees, however, it appears that the trial court applied too limited an interpretation of Articles VIII and X, and disallowed the fees on the basis of the "American Rule," under which each party is responsible for paying its own attorney fees. In the present case, however, the attorney fees at question were incurred not in pursuit of the case at bar, but as consequential damages arising from a breach of contract and subsequent attempts to mitigate damages or otherwise remedy the breach. The contract clearly provided for indemnification under these conditions, and even in the absence of specific terms fees might have been recoverable if proven to flow from the breach. As such, attorney fees are allowable on the present facts as damages and do not fall under the American rule. Complete Gen. Const. Co. v. Koker DrillingCo., Franklin App. No. 02AP-63, 2002-Ohio-4778.
 {¶ 35} We accordingly find that, as a matter of law, with the greater weight of competent and credible evidence before it to support an award of the bond costs, the trial court did not err in awarding the allowed expenses as a setoff. In contrast, however, we find that the trial court did err as a matter of law in its interpretation of Articles VIII and X of the contract, and we thus find that the weight of the evidence supports an award to Roslovic as an additional setoff the attorney fees incurred by Roslovic in clearing the liens from the Lowe's jobs or otherwise coping with the consequences of Mascrete's breach.
 {¶ 36} Finally, with respect to the miscellaneous expenses awarded for credits owed or work not performed by Mascrete that Roslovic was obliged to make good itself in order to deliver the job, we find that, again, there was competent, credible evidence in the form of testimony and documentary evidence to support the trial court's order and award of these costs for breach. While First Bank does point to other evidence in the record, this goes to weight and credibility which are, as outlined above, the province of the trier of fact. We do not find that the state of the record warrants reversal of the trial court on this question.
 {¶ 37} In summary, the trial court did not err in awarding $14,760 to Roslovic as a setoff for bonding-off costs, or $1,551.43 in setoffs for other breaches by Mascrete. The trial court did err, however, in failing to award $29,038.98 in attorney fees Roslovic incurred to handle the bonding-off of liens. First Bank's first assignment of error is overruled, Roslovic's first assignment of error is also overruled, and Roslovic's second assignment of error is sustained. A total setoff of $45,350.41 will be allowed against any amounts due by Roslovic to First Bank pursuant to the Supreme Court's judgment. The timing and effect of this setoff in its application to principal or interest will be discussed in connection with First Bank's fourth assignment of error below.
 {¶ 38} First Bank's second assignment of error asserts that the trial court erred in excluding summaries of evidence prepared by First Bank and proffered at trial. The admission or exclusion of evidentiary materials rests in the sound discretion of the trial court, Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 299, and an appellate court will give wide latitude to that trial court's discretion. State ex rel. Lee v. Montgomery
(2000), 88 Ohio St.3d 233, 235. The summaries presented by First Bank were duplicative of the original evidence already available in the case, and the trial court properly redirected them to be incorporated, if desired, in post-trial memoranda. Moreover, as Roslovic points out, similar disposition was made of comparable summaries proffered by Roslovic, so that the trial court's handling of this type of evidentiary submission cannot be questioned on the basis of uneven application to the respective parties. We find no abuse of discretion on the part of the trial court in excluding the summaries, and First Bank's second assignment of error is overruled.
 {¶ 39} We now turn to First Bank's fifth through ninth assignments of error, which address the appropriateness and amount of the charging lien in favor of First Bank's former counsel awarded by the trial court against the judgment proceeds. First Bank argues that the charging lien was not appropriate on the present facts for a number of procedural reasons, and that to grant such charging lien violated First Bank's right to have the former attorney's claim for unpaid fees tried before a jury, was otherwise unconstitutional, and was, moreover, miscalculated as to the amount of fees and interest due.
 {¶ 40} We first address the legal arguments raised in First Bank's fifth assignment of error, which asserts that a charging lien is inappropriate in this case because (1) such a lien should not be imposed in a matter involving an hourly fee agreement, and is restricted to contingent fee cases; (2) Holliker did not prosecute the matter to successful judgment; (3) Holliker withdrew from representation in violation of applicable disciplinary rules, leaving him with unclean hands that preclude his access to equitable remedies; and (4) Kegler did not properly seek to intervene in the matter pursuant to Civ.R. 24(C), and thus lacked standing in the trial court.
 {¶ 41} A charging lien in favor of an attorney is a lien upon judgment or other proceeds awarded to a client or former client. The standard most consistently cited in Ohio in determining the appropriateness of a charging lien remains that which was set forth in the syllabus of Cohen v. Goldberger (1923),109 Ohio St. 22:
The right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund.
 {¶ 42} As this court has previously acknowledged, the justification for an award of a charging lien remains rather obscure, since there is no explicit statutory or common-law rule in Ohio that gives an attorney a lien upon his client's cause of action. Putnam v. Hogan (1997), 122 Ohio App.3d 351, citing Inre Hronek (C.A. 6, 1977), 563 F.2d 296. As a result of the uncertainty of the remedy's origins, the circumstances under which a charging lien may be awarded are not well-settled either in Ohio or those other states where charging liens are not specifically created by statute. By way of illustration, Ohio courts have differed on whether the lien may attach and enforce only an attorney's right "to payment of fees earned in the prosecution of litigation to judgment," Cohen, syllabus (emphasis added), or whether it may attach to settlement proceeds as well. Mancino v. City of Lakewood (1987),36 Ohio App.3d 219, 223. Likewise, Ohio courts have debated whether an express fee agreement between client and counsel is necessary to allow creation of a charging lien. Minor Child of Zentack v. Strong
(1992), 83 Ohio App.3d 332. Precedent is often no clearer in other jurisdictions: courts in other states have questioned whether an attorney asserting a charging lien is entitled to be paid an hourly rate set by the court under a theory resembling quantum meruit, or whether a prior hourly or contingent fee agreement will be enforced. See, e.g., Casper v. Lew Lieberbaum Co., Inc. (2002), 182 F. Supp.2d 342 (applying New York statutory law). More pertinently applicable to the present case, there is some question whether an attorney discharged prior to obtaining judgment for his client may assert a charging lien at all, although no Ohio court has directly addressed the issue. See, e.g., Cherry v. Zucker (Pa. C.P. 2002), 57 Pa. D. C. 4th 33, affirmed (2002), 817 A.2d 1172, appeal denied (2003),573 Pa. 682, certiorari denied (2003), ___ U.S. ___, 124 S.Ct. 477.
 {¶ 43} The trial court in the case before us acknowledged many of these points of uncertainty in the law, noting particularly the difficulty in awarding a charging lien in favor of an attorney who had withdrawn prior to obtaining judgment for his client. The court in response to such concerns made a specific factual finding that Holliker had been forced to withdraw because of First Bank's "totally unjustified" refusal to pay his fees. While the court questioned whether a charging lien would be appropriate if counsel had not been forced to withdraw, the court found under the circumstances that withdrawal was no bar to a lien. The court concluded by finding that "but for" the efforts of Holliker, the ultimate judgment partially in favor of First Bank would not have been obtained, albeit only after much time and further litigation, and that Holliker's fees accordingly could be recovered through a charging lien.
 {¶ 44} Because it represents something of a threshold issue, we will first briefly address First Bank's contention that a charging lien was inappropriate in the present case because Kegler appeared in the trial court upon motion, rather than intervening as a party under Civ.R. 24. The sole Ohio court to have fully discussed the issue has expressly held otherwise:Fire Protection Resources, Inc., v. Johnson Fire Protection Co.
(1991), 72 Ohio App.3d 205 ("[T]his court finds that a motion to declare and enforce an attorney's charging lien on the proceeds of judgment must be entertained by the court in the action in which the judgment was rendered[.] * * *") While cases may be found in which attorneys pursued a charging lien through intervention, e.g., Gest v. Gest (Nov. 15, 2000), Lorain App. No. 99CA007317, at most, this defines an alternative procedural option, rather than precluding the one chosen by Kegler in the present case. We therefore, find that Kegler properly placed the issue before the trial court by motion.
 {¶ 45} We next turn to First Bank's contention that Holliker's withdrawal from the case violated local rules and applicable Disciplinary Rules and should bar his successor in interest from recourse to the equitable remedy of a charging lien. The trial court's factual determination was that Holliker was forced to withdraw. We have no serious argument before us that would warrant disturbing this factual finding on a manifest weight basis. While the effect of Holliker's early departure from the case may have other consequences as will be discussed below, we find that it is not per se preclusive of an equitable remedy on the basis of conduct warranting application of the doctrine of unclean hands.
 {¶ 46} First Bank next asserts that because Holliker was not working for a contingent fee, but rather sought to recover under an hourly fee arrangement, a charging lien should not be imposed. While it is accurate to state that most cases allowing charging liens in Ohio have involved contingent fee agreements, there is no sound authority expressly precluding charging liens in hourly fee cases, and we can discern no reason to make such a distinction if all other requirements for a charging lien are met. Whether a fund is generated by the efforts of an attorney working on an hourly basis or a contingent fee basis seems immaterial. Those cases cited by First Bank for the proposition that a contingent fee is necessary in fact stress the requirement of a formal fee agreement, without turning on its terms as hourly or contingent: Mancino; Zentack; Rust v. Harris-Gordon
(June 30, 2000), Lucas App. No. L-99-1287. In at least one previously cited Ohio case, Fire Protection Services, it may be inferred that the agreement was hourly, rather than contingent; authority from other states declining to impose such a distinction is also not lacking, although admittedly affected by variations in statutes specifically providing for attorney liens.Casper v. Lieberbaum, supra; Holly v. Rent-a-Center (S.D.Ind. Aug. 9, 2000), No. IP-00-580-C-Y/F; Stasey v. Stasey (1992),168 Wis.2d 37, 483 N.W.2d 221; Spinelli v. Rodes-Roper-Love Ins.Agency Inc. (Fla.App. Jan. 8, 1993), 613 So.2d 504. We accordingly find that, if all other requisite factors are met, a charging lien may be granted to an attorney working under an hourly fee arrangement.
 {¶ 47} We now turn to the most problematic factor affecting the award of a charging lien on the facts before us: applying the syllabus language of Cohen, can it be said in the present case that the charging lien in favor of Holliker's successor in interest may sufficiently rest upon the equity to be paid out of the judgment by him obtained, and be upheld on the theory that his services and skill created the judgment obtained by First Bank?
 {¶ 48} As First Bank's argument points out in multiple reiterations, Holliker represented First Bank only in its initial proceedings in the trial court in 1996, culminating in a trial that yielded an outcome entirely unfavorable to First Bank. The matter then proceeded through an unsuccessful appeal to this court before finally reaching the Supreme Court, where a judgment partially in favor of First Bank was ultimately obtained. Only a portion of the issues argued by Holliker as counsel for First Bank in the initial court of common pleas proceeding related to the sole issue on which the Supreme Court reversed and ultimately entered judgment in favor of First Bank. Even that judgment was preserved only after prolonged representation by successor counsel in four (to date) subsequent stops before the trial court and this court.
 {¶ 49} The further removed the former attorney's contribution lies from the ultimate judgment in favor of his client, the more difficult it becomes to overlook the equitable and legal contradictions inherent in the granting of a charging lien. Chief among these, we must share the concern of other courts that excessively liberal use of charging liens in favor of attorneys elevates counsel to a class of super-creditors with priority above all other claimants against the proceeds of a judgment, even where those claims may pre-date counsel's claim to fees.Szymczak v. Szymczak, Cuyahoga App. No. 79109, 2002-Ohio-4766. Too-easy recourse to the remedy of a charging lien would also systematically deprive clients of the opportunity to place what is essentially a contractual dispute before the court as a conventionally postured civil action, with its attendant procedural safeguards and formalities. The availability of such a shortcut in favor of our own profession, exclusive of all others, should be, for a number of reasons, applied with considerable restraint.
 {¶ 50} In the present case, the best guidance on the question of charging liens is still that set forth above in Cohen: the right to a charging lien is most closely associated with the equitable right of an attorney to be paid out of the judgment "by him obtained, and is upheld on the theory that his services and skills created the fund." The "but for" test applied by the trial court in this case, while reflected in one line of the opinion text in Cohen, is substantially broader than the "creation of the fund" standard suggested by the syllabus of that case, and where the text of a Supreme court case conflicts with the syllabus we are bound to consider the syllabus as stating the controlling points of law decided. EFCO Corp. v. AdvancedGlazing Technology, Inc. (May 19, 1994), Franklin App. No. 93APE10-1377; S.Ct.R.Rep.Op. 1(B)(2). Adoption of a "but for" test as posited by Kegler in this case inevitably would allow overly permissive application of charging liens. For instance, an attorney hastily retained to file a tort claim on the eve of expiration of the statute of limitations, and then immediately replaced with more experienced counsel who prosecuted the balance of the claim to judgment, could reasonably argue entitlement to a lien in proportion to a contingency fee on the basis that, but for that initial participation, the judgment could never have been obtained. Since contribution to a legal cause is difficult to quantify, any one participant in a combined legal effort, no matter how remote their contribution, could stretch a "but for" standard to invoke a charging lien. We find that this is too liberal a standard, and prefer to strictly apply the requisites spelled out in the syllabus of Cohen.
 {¶ 51} On the present facts and given the extensive course of litigation in this case, we simply find that the trial court's appropriately expressed reservations regarding the application of a charging lien in this case would ultimately have outweighed the arguments in favor of such a lien, had the correct standard fromCohen been applied. We accordingly find that the trial court erred in finding a charging lien in favor of Kegler, as successor of Holliker, in a claim for fees against First Bank, because Holliker's efforts cannot be said to have "created" the fund from which the lien is to be paid. While First Bank's fifth assignment of error is accordingly sustained, in making this determination we are compelled to note that it in no way represents a determination of the merits of the underlying fee claim.
 {¶ 52} First Bank's sixth assignment of error, which raises constitutional challenges to the application of a charging lien, will not be addressed both on the theory that our resolution of the fifth assignment of error renders it moot and that this court will not reach constitutional arguments where legal arguments will dispose of the question. In re Miller (1992),63 Ohio St.3d 99. First Bank's seventh, eighth, and ninth assignments of error, addressing the amount of principal and interest due upon the charging lien, are rendered moot in their entirety.
 {¶ 53} We now turn to those issues arising out of the trial court's treatment of various payments either made or tendered by Roslovic during the course of the case.
 {¶ 54} First Bank's third assignment of error asserts that the trial court erred when it credited Roslovic with a $20,000 principal payment, and a related $6,259.83 payment of interest on that amount, arising from the proceeding in the Washington County Court of Common Pleas to enforce a garnishment order against Roslovic. The trial court found that these payments were in the way of damages coinciding with the amounts due in the present matter, and should be credited against any amount found owing by Roslovic to First Bank.
 {¶ 55} The garnishment order issued by the Washington County Court of Common Pleas arose when First Bank became aware that Roslovic was making labor payments directly to Mascrete in possible violation of the assignment. The last two labor payments made by Roslovic directly to Mascrete, $10,000 on September 9, 1994 and $10,000 on September 15, 1994, were made after the Washington County court issued its order enjoining such payments. First Bank then pursued an action, characterized as one for contempt, in Washington County and eventually obtained a judgment for $20,000 based on the payments made in violation of the garnishment order. The substance of that order was affirmed on appeal to the fourth district, First Bank of Marietta v.Mascrete, Inc. (Mar. 11, 1996), Washington Cty. App. No. 95CA4, on further appeal to the Supreme Court, First Bank of Mariettav. Mascrete, Inc. (1997), 79 Ohio St.3d 503, and, after remand, upon another appeal to the fourth district, First Bank ofMarietta v. Mascrete, Inc. (1998), 125 Ohio App.3d 257. Roslovic eventually paid the judgment amount of $20,000 and interest on that judgment of $6,259.83.
 {¶ 56} The parties assert antithetical characterizations of the nature of the Washington County judgment and thus the effect to be given to the payment of that judgment by Roslovic. First Bank asserts that the judgment imposed in Washington County was in the nature of a contempt penalty, and any payment pursuant to the judgment by Roslovic is separate and should not be applied towards any judgment awarded in the present case. Roslovic asserts, to the contrary, that the trial court properly found that the Washington County case merely represented a parallel attempt by First Bank to enforce its rights as assignee, and that the Washington County Court of Common Pleas, when ordering payment, was enforcing the effect of its garnishment order to prohibit any payments in violation of the assignment.
 {¶ 57} The question is thus, for purposes of computing payments made by Roslovic in the present case, whether the Washington County judgment is more in the nature of a punitive sanction above and beyond any other damages awardable in the case, or rather in the nature of a compelled payment, through garnishment and contempt proceedings, upon amounts already determined to be owed and subsequently forming the basis of damages in the matter. Fortunately, the issue is capable of resolution primarily by reference to the opinions rendered by the Washington County Court of Common Pleas and the Fourth District Court of Appeals, and although the language of those decisions is not without occasional ambivalence, on the whole, it is clear that those courts intended the award to be in the nature of damages upon the amounts due, rather than simply punitive in nature.
 {¶ 58} Most significant, of course, is the simple congruence between the $20,000 sum improperly paid by Roslovic to Mascrete and the identical amount of the judgment as initially entered by the Washington County Court of Common Pleas. The language of that first trial court decision supports the inference that the award was made in that amount because the court intended to simply enforce the garnishment after the fact:
The Court finds that Roslovic is in contempt of this Court's garnishment order by paying $20,000 to defendant Mascrete, Inc. after being served with the garnishment order. Roslovic made the payment to Mascrete by two checks in the amount of $10,000 each dated September 9, 1994 and September 15, 1994.
It is therefore ORDERED that judgment is entered in favor of plaintiff The First Bank of Marietta against garnishee Roslovic 
Partners, Inc. in the amount of $20,000 with interest * * *.
First Bank of Marietta v. Mascrete, Inc. (Dec. 5, 1994), Washington Cty. C.P. No. 94 OT 257.
 {¶ 59} The multiple subsequent appeals from the Washington County judgment were largely challenges against the appropriateness of contempt proceedings as a vehicle for recovery by First Bank against Roslovic, and while the appellate courts thus, of course, continued to identify the matter as a contempt proceeding, the amount awarded continued to have a non-punitive characterization. The Fourth District Court of Appeals applied this characterization of the award as one for damages even while rejecting Roslovic's argument that such an award violated due process rights because made in a summary contempt proceeding rather than in a full trial. In answering this argument, the court consistently cast the award as one for damages:
[T]he appellant argues that the trial court erred in issuing a full civil judgment for damages pursuant to a motion for contempt. Appellant contends that there is no basis in R.C.2716.21(E) for a civil judgment. In essence, the appellant argues that * * * while the court may hold the garnishee in contempt pursuant to R.C. 2716.21(E), the court can award damages only in a civil action pursuant to R.C. 2716.21(F).
* * *
Compensation of the injured party has been a traditional function of civil contempt. Therefore, judicial sanctions and civil contempt proceedings may be employed to compensate the complainant for losses sustained where it can be proven that thedamages were a direct result of the contempt.
First Bank of Marietta v. Mascrete, Inc. (1998),125 Ohio App.3d 264, at 267-268. (Emphasis added; citations and footnotes omitted.)
 {¶ 60} In addition to the intent of the Washington County Court of Common Pleas which we discern from the language in its own and the reviewing court's decisions, we find that the facts and circumstances of the present case give rise to strong equitable considerations in favor of characterizing the Washington County award as one for damages rather than a punitive sanction to be imposed above and beyond compensatory damages. As described above in our analysis of R.C. 1309.37, Roslovic is already subject to double payment on the amounts found by the Supreme Court to have been wrongfully disbursed in violation of the assignment; that is, Roslovic, having already paid these sums (including the $20,000 at issue in the Washington County case) directly to Mascrete, will pay some or all of the amount again to First Bank. If the $20,000 awarded in the Washington County case is cast as anything other than an enforced payment on amounts due under the assignment, what is already an onerous double payment would be transformed into triple payment by Roslovic, a result which the facts of this case do not warrant. We accordingly find that the trial court did not err in including payments made under the Washington County judgment as amounts to be deducted at time of payment from amounts owed to First Bank by Roslovic under law in the present case. First Bank's third assignment of error is accordingly overruled. The question of whether the payments were properly credited to principal or interest will be addressed in connection with First Bank's fourth assignment of error and Roslovic's third assignment of error.
 {¶ 61} First Bank's fourth assignment of error and Roslovic's third assignment of error each assert that the trial court erred in its application of setoffs and payments against principal and interest due. In gross, the trial court made the following computations: as established by the Supreme Court's decision inRoslovic II, the principal balance owed to First Bank by Roslovic as of September 15, 1994 was $159,972.20. Since this principal accumulated from a series of payments through that date, the trial court computed interest separately for each labor check issued by Roslovic to Mascrete from the date of disbursement, and then collectively on the entire amount after the last labor check had been disbursed. The trial court applied the $20,000 payment in the Washington County judgment against principal, as of its date of payment of January 22, 1998, and interest paid in the Washington County case, paid on the same date, against interest in the present case. The trial court applied the setoff for bond premium payments and overpayments against interest as of August 27, 1997, the date of the original trial court judgment allowing these setoffs. The trial court applied a 1999 payment by Roslovic to First Bank in the amount of $31,070.42 against principal, and a contemporaneously tendered payment by Roslovic in the amount of $46,854.99, made payable jointly to First Bank and Kegler and refused by First Bank, against principal solely for the purpose of calculating interest. The trial court's conclusion in this respect was apparently that the amount was properly tendered pursuant to the trial court's prior instruction that Roslovic pay the amount of Kegler's charging lien jointly to Kegler and First Bank, and that Roslovic should accordingly not be penalized by having interest accrue on amounts it had tendered but seen refused by First Bank.
 {¶ 62} We find that the trial court erred as a matter of law in applying certain payments directly to principal instead of to accumulated interest. The general rule in Ohio is that, where partial payments on a judgment are made, they will be applied first to accumulated interest, and only when exceeding interest will the balance of payments be applied to principal. Viock v.Stowe-Woodward Co. (1989), 59 Ohio App.3d 3, 8. With the exception of the setoffs allowed pursuant to the contract between Roslovic and Mascrete, all remaining payments by Roslovic to First Bank, including the amounts paid under the Washington County case, are beyond question payments on the judgment debt, and thus will be applied first to interest and then principal.
 {¶ 63} Although we will treat the contractual setoffs allowed in the present decision somewhat differently from the other payments, it is again a result of the muddled law of the case in this matter that no very consistent or logically elegant rule can be applied to these setoffs. One widely applied solution in similar cases would be to conclude that the setoffs, being amounts not contractually payable to First Bank at all, should be deducted from principal ab initio and never accrue interest. See, e.g., In re Doctors Hosp. of Hyde Park, Inc. (C.A. 7, 2003),337 F.3d 951, 954. (Applying Illinois version of UCC 9-318). However, this court specifically rejected that view when addressing interest computations in Roslovic III: "The [Supreme Court's] mandate * * * in this case clearly sets out that the $159,972.22 was wrongfully paid by Roslovic to Mascrete. Roslovic was therefore liable to First Bank for that amount, and, pursuant to R.C. 1343.03(A), interest accrues from the date the amount became due and payable. * * * Therefore, interest on the $159,972.22 began to run from July 1994." Roslovic III, at 543. "Upon remand, should the trial court decide that the [setoff] * * * is related to the assignment from Mascrete to First Bank, it may then make an appropriate deduction from the $159,972.22 consistent with its finding. Interest should then be reduced by the amount of the court's finding from the date that Roslovic received a judgment against Mascrete." Id. (Incorrect decimal amounts came from Supreme Court decision in Roslovic II.) Our prior determination is clear and stands as the law of the case requiring that the contractual setoffs shall be applied only as of the trial court's 1997 decision.
 {¶ 64} Summarizing the treatment of payments and interest in this case, we hold that upon remand the trial court shall recalculate the amount due in this matter applying pre-judgment and post-judgment interest at the statutory rate, as before, to the labor checks commencing with the date of disbursement for each check, with a total principal amount as of September 15, 1994, of $159,972.20. The amounts allowed as contractual setoffs, including the bonding-off costs of $14,760, the miscellaneous contractual overpayments of $1,551.43, and the attorney fees disallowed by the trial court but reinstated by this opinion of $29,038.98, the sum total being $45,350.41, shall be applied first to interest, then to principal, as of the trial court's original August 27, 1997 judgment in favor of Roslovic against Mascrete. Thereafter, the other allowed payments ($20,000 and $6,259.83 on January 22, 1998, in the Washington County case and $31,070.42 on November 4, 1999 in the present case) shall be applied first to interest and then to principal. In addition, the $46,854.99 tender from Roslovic to First Bank and Kegler jointly, which was refused by First Bank, to the extent that it exceeds interest due at the time of tender shall be applied to principal solely for the purpose of staying the running of interest as if it had been accepted by First Bank. We agree with the trial court's reasoning that Roslovic should not be penalized for its attempt to pay a then-valid, although subsequently reversed, judgment of the trial court in the manner exactly mandated by the trial court's decision. This application against principal of the attempted joint payment from Roslovic to First Bank and Kegler shall be effective from the date of tender, November 4, 1999, through the date of issuance of this court's judgment entry in the present appeal. Interest shall thereafter be computed on the full amount of unpaid principal. The trial court shall of course, as it did before, otherwise consider the $46,854.99 tender as amounts not yet paid by Roslovic or received by First Bank. The net outcome of this determination with respect to the treatment of all payments and interest in this case is to overrule Roslovic's third assignment of error, and overrule First Bank's fourth assignment of error in part and sustain it in part.
 {¶ 65} In addition to the substantive matters in this appeal, pending before us is a motion for sanctions filed by First Bank seeking a contempt finding against Kegler based on Kegler's refusal to facilitate First Bank's collection of monies previously paid into court by Roslovic. The motion for sanctions is overruled.
 {¶ 66} In conclusion, appellant First Bank of Marietta's fifth assignment of error is sustained and First Bank's fourth assignment of error is sustained in part and overruled in part. First Bank's first, second and third assignments of error are overruled, and First Bank's sixth, seventh, eighth, and ninth assignments of error are rendered moot. Cross-appellant Roslovic Partners, Inc.'s first and third assignments of error are overruled, and Roslovic's second assignment of error is sustained. First Bank's motion for sanctions is overruled. This matter is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with law and this opinion.
Judgment affirmed in part, reversed in part, motion for sanctions overruled, and cause remanded with instructions.
Lazarus, P.J., concurs.
Sadler, J., concurring separately.
[1] Since the setoffs in question arise out of the same contract or transaction that created the assigned debt, they would more properly be discussed in the narrower context of a right of recoupment. Natl. City Bank, Northwest v. ColumbianMut. Life Ins. Co. (C.A. 6, 2002), 282 F.3d 407. For the sake of consistency with past court decisions in this case we will continue to use the broader term "setoff."